[No. A055665. First Dist., Div. One. Dec. 29, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN PATTON WILSON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication with the exception of the first paragraph of the Discussion and parts I through III.

**COUNSEL**

Robert D. Platt, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Joanne S. Abelson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DOSSEE, J.**—John Patton Wilson appeals from his conviction for false imprisonment (Pen. Code, §§ 236/237), burglary (Pen. Code, § 459), use of a controlled substance (Health & Saf. Code, § 11550), brandishing a weapon (Pen. Code, § 417, subd. (a)(1)), driving under the influence of alcohol (Veh.

Code, § 23152, subd. (a), and driving with a blood-alcohol level greater than .08 (Veh. Code, § 23152, subd. (b)).[1] We affirm.

PROCEDURAL AND FACTUAL BACKGROUND

All of the charges arose from appellant's relationship with Sherry Parsons. Appellant and Parsons met in March of 1991, and appellant moved into the trailer where Parsons was staying at the time. Parsons discovered that appellant was aggressive, profane, and dominating, and asked him to move out three or four days later. Appellant refused to leave and threatened Parsons if she tried to leave. In the next month, Parsons told him approximately 20 times that she wanted him to leave, but he refused.

On May 1, 1991, appellant and Parsons were at the grocery store when appellant "snapped" and grabbed her by the hair, threw her down, and broke the grocery bag. A couple stopped and offered to call the police. Daniel Brackett, who knew appellant, drove up with Sean Pray and saw appellant pulling Parsons by the hair. Parsons looked scared and said she did not want to go with appellant. Brackett calmed appellant and took Parsons and appellant to another location. Parsons said she was afraid of appellant and stayed with Pray and Brackett.

Following the May 1 incident at the store, appellant went to Modesto to do undercover drug informant work for the police. Parsons picked up her things from the home of appellant's mother and moved into Sean Pray's tent. Parsons and Pray moved the tent to another campground when Parsons heard that appellant had returned from Modesto and was looking for her. Parsons told other people in the campground that she was afraid of appellant and instructed them to call the police if appellant ever came to the campground.

In the early morning hours of May 11, 1991, appellant appeared at Pray's tent. He unzipped the tent, stepped inside and said "I've come to get you. You're going with me. Get your ass up, get your clothes on and get your stuff. You're going to go with me or I'm going to kick your ass." Appellant was yelling and Parsons was scared. She complied with his request, but stalled for time to allow another camper to call the police.

While Parsons was packing her belongings, appellant pointed his knife at Pray, who was in his sleeping bag. Appellant told Pray to stay where he was and threatened to cut him and slice the tent. Appellant also threatened to burn Pray and set fire to the tent. He told Pray if he ever came to Lake County he would disappear. Appellant ripped a gold chain off Pray's neck

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

and said "You're lucky it isn't your throat." Appellant slashed the tires of Pray's car with his knife, and kicked a lantern near his head, shattering glass over the bed.

Appellant drove away with Parsons, but was arrested when he stopped at a gas station. Police noticed that appellant appeared agitated, was sweating profusely, and had fresh needle marks on his arm. Analysis of appellant's blood revealed the presence of cocaine and a blood-alcohol level of .18.

On June 10, 1991, an information was filed charging appellant with the following crimes: in count 1 with kidnapping of Parsons and a special allegation of using a deadly weapon (§ 12022, subd. (b)); in count 2 with false imprisonment of Parsons and Pray; in count 3 with burglary of the tent; in count 4 with making terrorist threats (§ 422); in count 5 with assault with a deadly weapon on Pray (§ 245, subd. (a)(1)); in count 6 with use of the controlled substance methamphetamine; in count 7 with driving under the influence of drugs and alcohol; and in count 8 with driving with a blood-alcohol level of .08 or more.

On August 7, at the close of the prosecution case, the court granted a defense motion to dismiss count 4 and denied a motion to dismiss count 6. It also granted a request to amend count 6 to substitute cocaine for methamphetamine.

Appellant testified that he had no idea that Parsons didn't want to be with him. He went looking for her that morning to reestablish their relationship after his trip to Modesto. He admitted that he shouted orders, that he had the knife while he was in the tent, that he punctured Pray's tires, threatened Pray, and kicked the lantern.

The jury found appellant guilty of false imprisonment, burglary, use of cocaine, driving under the influence, and driving with a blood-alcohol level greater than .08. It found him not guilty of assault with a deadly weapon, but guilty of the lesser related misdemeanor of brandishing the knife (§ 417, subd. (a)(1)). It failed to reach a verdict on the kidnapping charge and special allegation of using the knife to commit kidnapping, and a mistrial was declared on those two issues. The prosecutor's subsequent request to dismiss count 1 and the weapon allegation was granted on August 15.

Appellant was sentenced to a total of five years and four months in prison. The court stayed execution of sentence and placed appellant on probation with 600 days in county jail and other conditions. Appellant waived the one-year county jail limitation of section 19.2. A timely notice of appeal was filed on November 12, 1991.

Discussion, I-III*

. . . . . . . . . . . . . . . . . . . . . . . . .

## IV. *A Tent Can Be the Object of First Degree Burglary*

 Appellant argues that a tent is not an inhabited dwelling house or a building for purposes of the first degree burglary statute. He bases his argument on the common definitions of "house" and "building" and the language of the relevant statutes. We find no merit in this point.

Appellant cites *People* v. *Moreland* (1978) 81 Cal.App.3d 11 [146 Cal.Rptr. 118] as a close parallel of the instant case. *Moreland* involved the issue of whether shooting at a recreational vehicle constituted discharging a firearm "at an inhabited dwelling house [or] occupied building" for purposes of section 246.[4] Relying on *McBoyle* v. *United States* (1931) 283 U.S. 25 [75 L.Ed. 816, 51 S.Ct. 340], the *Moreland* court concluded that a recreational vehicle "suitable and used for weekend trips, including overnight stays, does not come within either the common meaning or the dictionary definition of 'house' or 'building.' " (*People* v. *Moreland, supra,* 81 Cal.App.3d at p. 18.) The court also noted that section 246 was subsequently amended to cover vehicles, campers, and house cars. (*Id.,* at p. 14, fn. 2; *id.,* at p. 21.) The *McBoyle* case involved reversal of a conviction for transporting a stolen motor vehicle when the defendant had transported a stolen airplane. The Supreme Court in *McBoyle* found that an airplane was clearly not a motor vehicle.

The *Moreland* court cited several dictionary definitions of the words "house" and "building", including: " '[A] structure intended or used for human habitation: a building that serves as one's residence . . .' " and " '[A] relatively permanent essentially boxlike construction having a roof and often windows and enclosing within its walls space, usually on more than one level, for any of a wide variety of activities, as living, entertaining, manu-facturing, etc.' " (*People* v. *Moreland, supra,* 81 Cal.App.3d at p. 18, fn. 4.) While either of these definitions may not include such mobile items as cars or airplanes, we do not believe these broad definitions similarly exclude a

---

*See footnote, *ante,* page 1483.

[4]At the time relevant in the *Moreland* case, section 246 provided: "Any person who shall maliciously and wilfully discharge a firearm at an inhabited dwelling house or occupied building, is guilty of a felony, . . ." (*People* v. *Moreland, supra,* 81 Cal.App.3d at p. 14.)

tent. Courts have defined "building" broadly, to include such structures as a telephone booth, a popcorn stand on wheels, a powder magazine dug out of a hillside, a wire chicken coop, and a loading dock constructed of chain link fence. (*People* v. *Brooks* (1982) 133 Cal.App.3d 200, 205 [183 Cal.Rptr. 773]. A "house" has also been broadly defined as "any structure which has walls on all sides and is covered by a roof." (*People* v. *Buyle* (1937) 22 Cal.App.2d 143, 148 [70 P.2d 955].) We reject appellant's claim that a tent does not fall within the dictionary definition of a "building."

Appellant also argues that a comparison of the statutory language distinguishing first and second degree burglary shows that the Legislature did not intend burglary of a tent to be first degree burglary. Section 459 provides in relevant part: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, . . . railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, . . . any house car, . . . inhabited camper, . . . vehicle . . . aircraft . . . or mine . . . with intent to commit . . . any felony is guilty of burglary." Section 460, subdivision (a) provides: "Every burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home . . . or the inhabited portion of any other building, is burglary of the first degree." Appellant reasons that since the word "tent" comes after the phrase in section 459 which ends with "or other building," a tent, being listed with vehicles and aircraft, is not a "building" for purposes of either burglary statute. He argues that section 460 indicates an intent to limit first degree burglary to fewer types of structures than those listed in section 459.

■ The term " 'inhabited dwelling house' " means "a structure where people ordinarily live and which is currently being used for dwelling purposes. [Citation.] A place is an inhabited dwelling if a person with possessory rights uses the place as sleeping quarters intending to continue doing so in the future. [Citations.]." (*People* v. *Fleetwood* (1985) 171 Cal.App.3d 982, 987 [217 Cal.Rptr. 612]; *People* v. *Hines* (1989) 210 Cal.App.3d 945, 950 [259 Cal.Rptr. 128].) " 'The place—whether dwelling house or building— must be *inhabited*. This requirement makes relevant some of the common law decisions and distinctions on dwelling house. Thus, it can be any kind of structure if used as a habitation.' " (*People* v. *Grover* (1986) 177 Cal.App.3d 1182, 1186 [223 Cal.Rptr. 444].) "Despite the use of the term 'mansion house' by the early writers it is clear that a man's actual place of abode does not fail to qualify [as a dwelling house] merely because of its poor or squalid condition, as in the case in which it consisted of a sheet stretched over poles and fastened to boards nailed to posts for sides, being closed at one end and

having an old door at the other." (Perkins, Criminal Law (3d ed. 1982) pp. 255-256, citing *Favro* v. *State* (1898) 39 Tex.Crim. 452 [46 S.W. 932].)

We conclude that it is the element of habitation, not the nature of the structure that elevates the crime of burglary to first degree. An "inhabited dwelling house," as referenced in section 460, subdivision (a), must be defined as a person's actual place of abode, regardless of the material of which it is built. Applying that conclusion to the instant case, we find that the tent at issue herein, having four sides and a roof and being inhabited by Pray and Parsons and used for sleeping and storage of their possessions, is a dwelling house, for purposes of section 460, subdivision (a).

The judgment is affirmed.

Strankman, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied January 28, 1993, and appellant's petition for review by the Supreme Court was denied March 25, 1993. Mosk, J., Baxter, J., and George, J., were of the opinion that the petition should be granted.