[No. B104261. Second Dist. Div. Three. Oct. 28, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
FRED FOX, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III. b., c. and d.

## COUNSEL

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and G. Tracey Letteau, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ALDRICH, J.—**

### I.

In the published portion of this opinion we determine the trial court properly instructed the jury that, for purposes of Penal Code section 460, the statute defining degrees of burglary, "[w]here a garage is attached to an inhabited dwelling house and is, therefore, not a separate structure, it is considered to be a part of the inhabited structure."

In the unpublished portion of this opinion we determine the trial court properly instructed the jury on the principles of aiding and abetting and the reasonable doubt burden of proof. In addition, we conclude the trial court properly relied on Fred Fox's single prior felony conviction to both double his sentence in accordance with the three strikes law and impose a five-year sentence enhancement.

We affirm the judgment.

### II.

#### FACTUAL AND PROCEDURAL BACKGROUND

a. *January 12, 1996.*

Viewed in accordance with the usual rules of appellate review (*People v. Johnson* (1993) 6 Cal.4th 1, 38 [23 Cal.Rptr.2d 593, 859 P.2d 673]), the evidence established that on January 12, 1996, Luis Anaya lived on Cedar Street in Huntington Park. Next to, but separate from Anaya's house, was a garage with a storage room. In the storage room Anaya kept a number of things, including a lawn mower.

Norma Jacinto lived on State Street in Huntington Park, not far from Anaya's home. At approximately 11 p.m., Jacinto heard her dogs barking. When she looked out the window she saw two individuals, one of whom was carrying a lawn mower, coming through an opening in her neighbor's fence. Jacinto telephoned police, then went back to the window and saw that the lawn mower had been left leaning against the fence. Jacinto then saw one of the individuals run across her yard.

At approximately 11:08 p.m., Huntington Park Police Officer Christopher Lisner responded to a call directing him to Jacinto's home on State Street. When he arrived at the address, two men directed Lisner to the backyard. In the yard, Lisner saw two men, one of whom was Fox. When Fox and his companion, Robert DeJuan Henry, saw the officer, they ran. Henry ran in one direction, while Fox ran in another. Lisner followed Henry. Two additional officers who had been called to the scene followed Fox. Fox was apprehended as he attempted to crawl under a van in a driveway.

Luis Anaya identified the lawnmower as the one he had stored in his garage storage room. Anaya had not given Fox permission to enter or take anything from the storage room.

b. *February 7, 1996.*

On February 7, 1996, Francisco Cruz lived in a duplex on Cottage Street in Huntington Park. Cruz's garage is attached to the side of his apartment. The only entrance to the garage is the large outside door. On a shelf inside the garage, Cruz stored a small portable television/radio. On that morning, Cruz's wife drove their car out of the garage and closed the garage door, but did not lock it. Later that day, Cruz realized the garage door was open and discovered his television/radio was missing.

At approximately 1 p.m., Huntington Park Police Officer Ioane Tua was on patrol in a marked car on Albany Street in Huntington Park. Albany Street is near Cottage Street. Tua saw Fox walking down the alley behind Albany Street carrying a portable television/radio. As Tua approached Fox from behind, Fox glanced back, then quickly turned into a walkway leading to an apartment complex. Tua pulled up to the walkway and saw Fox running away, still carrying the television/radio. Several minutes later, Fox was detained by another police officer in a nearby backyard.

c. *Trial.*

A jury convicted Fox of one count of first degree burglary and one count of second degree burglary (Pen. Code, §§ 459, 460). The trial court found

true the allegations Fox had previously been convicted of a serious felony (Pen. Code, § 667, subds. (a)(1) & (b) to (i)), and previously served four separate prison terms (Pen. Code, § 667.5, subd. (b)). The court sentenced Fox to a term of 18 years, 4 months in prison. Fox timely filed a notice of appeal.

## III.

### DISCUSSION

a. *The trial court properly instructed the jury an attached garage is part of an inhabited dwelling house.*

The trial court instructed the jury that, if it should find Fox guilty of burglary, it must determine the degree of the burglary. The court, reading from CALJIC No. 14.51, then informed the jury that "[e]very burglary of an inhabited dwelling house or portion of any building, is burglary of the first degree. [¶] All other kinds of burglary are of the second degree." The trial court further instructed the jury that "[w]here a garage is attached to an inhabited dwelling house and is, therefore, not a separate structure, it is considered to be a part of the inhabited structure."

Fox contends the trial court erred by instructing the jury an attached garage is part of an inhabited dwelling house or structure. He urges, to find him guilty of first degree burglary, a jury must first find beyond a reasonable doubt that he entered an "inhabited dwelling." By instructing the jury an attached garage is to be considered part of an "inhabited dwelling," the trial court effectively usurped the jury's factfinding function as to that element of the offense. Stated another way, the trial court's instruction prevented the jury from deciding a material issue of fact and, in so doing, precluded the jury from finding Fox guilty of the lesser offense of second degree burglary.

Penal Code section 460 provides in relevant part: "(a) Every burglary of an inhabited dwelling house, vessel, . . . or trailer coach, . . . or the inhabited portion of any other building, is burglary of the first degree. [¶] (b) All other kinds of burglary are of the second degree."

In general, "[c]ases interpreting the term 'inhabited dwelling house' in section 460 . . . ha[ve] made it clear that this term should be construed to effectuate the legislative purposes underlying the statute, namely, to protect the peaceful occupation of one's residence. Thus, the courts [have] recognized that our burglary law stems from the common law policy of providing heightened protection to the residence. [Citations.] The occupied dwelling

continued to receive heightened protection under our statutes in order to avoid the increased danger of personal violence attendant upon an entry into a 'building currently used as sleeping and living quarters.' [Citation.] As [one court has] explained, 'a person is more likely to react violently to burglary of his living quarters than to burglary of other places because in the former case persons close to him are more likely to be present, because the property threatened is more likely to belong to him, and because the home is usually regarded as a particularly private sanctuary, even as an extension of the person.' [Citation.] Courts specifically have recognized that the distinction between first and second degree burglary is founded upon the perceived danger of violence and personal injury that is involved when a residence is invaded. [Citations.]" (*People* v. *Cruz* (1996) 13 Cal.4th 764, 775-776 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

 In keeping with the purpose of the statute, the term "inhabited dwelling house" has been given a "broad, inclusive definition." (13 Cal.4th at pp. 776, 779.) In particular, courts have consistently determined an attached garage is part of an inhabited dwelling house for purposes of Penal Code section 460. In *People* v. *Cook* (1982) 135 Cal.App.3d 785 [185 Cal.Rptr. 576], the court recognized that an attached garage and enclosed patio are not ". . . separate structures; rather they are an integral part of [one's] residence, entry into any part of which would be sufficient to constitute a burglary. [Citation.] [¶] . . . In the situation where the garage is an attached and integral part of the house, it is simply one room of several which together compose the dwelling." (*Id.* at pp. 795-796.) The *Cook* court noted that "[t]he statistically greater probability that an occupant of the house may be in the attached garage . . . justifies the Legislature's decision to treat burglaries of such locations more severely." (*Id.* at p. 796.)

In *People* v. *Moreno* (1984) 158 Cal.App.3d 109, 112 [204 Cal.Rptr. 17], the court, relying on *Cook*, determined an attached garage need not have a door connecting the garage to the interior of the house to be part of the dwelling house. The court stated, "[G]iven the fact that the garage was under the same roof, functionally interconnected with, and immediately contiguous to other portions of the house, simple logic would suffer were we to leap over this interrelationship to a conclusion that a garage is not part of a dwelling because no inside entrance connects the two. [Citations.]" (*Ibid.*; see also *People* v. *Ingram* (1995) 40 Cal.App.4th 1397, 1402-1404 [48 Cal.Rptr.2d 256], disapproved on another ground in *People* v. *Dotson* (1997) 16 Cal.4th 547, 559 [66 Cal.Rptr.2d 423, 941 P.2d 56]; *People* v. *Zelaya* (1987) 194 Cal.App.3d 73, 75-76 [239 Cal.Rptr. 289]; *People* v. *Coutu* (1985) 171 Cal.App.3d 192, 193 [217 Cal.Rptr. 191] [burglary of a storeroom connected to an inhabited dwelling by a breezeway constituted first

degree burglary]; *In re Christopher J.* (1980) 102 Cal.App.3d 76, 78 [162 Cal.Rptr. 147] [attached carport, with two sides open, deemed part of an "inhabited dwelling house"].)

In view of the foregoing, we conclude the trial court properly instructed the jury that, when a garage is attached to an inhabited dwelling, it is to be considered a part of the inhabited dwelling.

Fox's assertion the trial court's instruction improperly usurped the jury's function and directed a verdict as to the "inhabited dwelling" element of first degree burglary is not persuasive. The jury was instructed with CALJIC No. 14.51, that "every burglary of an inhabited dwelling house or portion of any building, is burglary of the first degree." The jury was then instructed with CALJIC No. 14.52, that "An inhabited dwelling house is a structure which is occupied and customarily used as a dwelling. It is inhabited although the occupants are temporarily absent." Finally, the court instructed the jury that "[w]here a garage is attached to an inhabited dwelling house and is, therefore, not a separate structure, it is considered to be a *part of* the inhabited structure." (Italics added.)

Under these instructions, the jury was still required to find that the "structure" entered by Fox was "inhabited." In addition, the jury was required to determine whether the garage was "attached," and thus an integral part of the structure. Only after making these factual determinations could the jury find Fox guilty of first degree burglary. Had the jury determined the structure was not inhabited or the garage was not attached, it would have been obligated to find Fox committed second degree burglary. Accordingly, the trial court's instruction did not preclude the jury from deciding a material issue of fact. The court's instruction no more usurped the jury's function than did the provisions of CALJIC No. 14.52, which inform the jury that a dwelling is "inhabited although the occupants are temporarily absent." These instructions simply inform the jury of well accepted rules of law. As given, the trial court's instruction properly informed the jury that, should it find the garage was attached and the structure was inhabited, the garage was to be considered an "integral part of the house" or "simply one room of several which together compose the [inhabited] dwelling." (*People v. Cook, supra,* 135 Cal.App.3d at p. 796.)

b.-d.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1041.

## IV.

### DISPOSITION

The judgment is affirmed.

Croskey, Acting P. J., and Kitching, J., concurred.

A petition for a rehearing was denied November 17, 1997, and appellant's petition for review by the Supreme Court was denied February 3, 1998.