[No. A121336. First Dist., Div. Three. July 31, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD THORN, Defendant and Appellant.

**COUNSEL**

Gretchen Franklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JENKINS, J.**—Defendant and appellant Richard Thorn (Thorn) appeals his jury trial conviction for first degree burglary in violation of Penal Code, section 460, subdivision (a).[1] Thorn contends his conviction should be reversed because the carport area where he committed the offense does not fall within the ambit of the burglary statutes. Thorn also contends the conviction should be reversed because the trial court directed a verdict of guilty on the first degree burglary charge by the manner in which it instructed the jury on the charge. As explained more fully below, we find these contentions unpersuasive, and therefore affirm.

### PROCEDURAL BACKGROUND

On December 24, 2007, the San Mateo County District Attorney filed an information charging defendant with the following offenses: count 1—commercial burglary, a felony (§ 460, subd. (b)); count 2—automobile burglary, a felony (§ 460, subd. (b)); count 3—first degree burglary of an inhabited dwelling house, a felony (§ 460, subd. (a)); count 4—being under the influence of a controlled substance, a misdemeanor (Health & Saf. Code, § 11550, subd. (a)); count 5—possession of drug paraphernalia, a misdemeanor (Health & Saf. Code, § 11364); and count 6—possession of a burglary tool, a misdemeanor (§ 466).

During trial on February 21, 2008, the People filed an amended information to change the name of defendant from Ray Glass to Richard Thorn and to insert the correct date for certain prior convictions. The People also dismissed count 1 (commercial burglary) in the interests of justice.

As amended, the information alleged that Thorn suffered two prior serious felony convictions for first degree burglary in June 1994, pursuant to section 667, subdivision (a). The information alleged the same two convictions for first degree burglary were strike convictions within the meaning of section 1170.12, subdivision (c)(1). Additionally, the information alleged Thorn had 10 prior felony convictions between May 1986 and June 2000 for purposes of section 1203, subdivision (e)(4). Further, the information alleged six prior felonies for purposes of section 667.5, subdivision (b).

On February 22, 2008, the jury returned a verdict of not guilty on count 2 (automobile burglary)[2] and a verdict of guilty on the lesser charge of vehicle tampering, in violation of Vehicle Code section 10852. The jury also found

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

[2] For auto burglary, the prosecution must prove defendant made a forced entry into a locked vehicle. (*In re Young K.* (1996) 49 Cal.App.4th 861, 863 [57 Cal.Rptr.2d 12].)

defendant not guilty on count 6 (possession of a burglary tool). The jury returned guilty verdicts on count 3 (first degree residential burglary), count 4 (under the influence of a controlled substance), and count 5 (possession of drug paraphernalia).

After the jury was dismissed the court held a bench trial on the alleged prior convictions. The trial court found all the prior conviction allegations true beyond a reasonable doubt. Furthermore, pursuant to section 667.5, subdivision (b), the trial court found that defendant had not remained free of prison custody for a five-year period between any of the priors alleged. The prosecution dismissed one of Thorn's two prior strike convictions for first degree burglary in the interests of justice.

At the sentencing hearing on April 18, 2008, the trial court granted Thorn's *Romero* motion.[3] The trial court noted the strike dated from 1993, Thorn's criminal background was nonviolent and mostly drug related, and that the current offense, although "not . . . trivial," would have been a misdemeanor if the vehicle had "been parked five or six feet outside of that carport." "[I]n view of the really de minimus nature of the offense and the fact that the defendant is going to be going to prison," the trial court struck Thorn's remaining strike conviction under *Romero*. Thereupon the trial court imposed an aggregate sentence of seven years imprisonment, comprised of the low term of two years on count 3 (first degree burglary) plus five consecutive years pursuant to section 667, subdivision (a). Thorn filed a timely notice of appeal on the day of sentencing.

## FACTS

The facts are adduced from the witness testimony and photographic evidence submitted at trial. In October 2007, Jose Hernandez and his wife lived at the apartment building at 50 Hillcrest Drive in Daly City where the burglary took place. On the evening in question, Hernandez parked his vehicle in his parking stall underneath the apartments on the ground floor of the building. On the way to his apartment on the level above the carport area, Hernandez met the "lady in Apartment 4." The lady pointed out an African-American man and told Hernandez she had seen the man looking into the

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504 [53 Cal.Rptr.2d 789, 917 P.2d 628] (holding that a trial court may utilize § 1385 to strike or vacate a prior strike for purposes of sentencing under the three strikes law, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion").

cars parked in the carports below. Hernandez saw the man walking around a red car parked in one of the carports. After Hernandez saw the man get into the red car, he went to his apartment and dialed 911. As he was talking to the 911 operator, Hernandez went back to observe the man's activities in the carport. Hernandez watched as the man got in and out of the driver's side, front passenger side, and backseat of the red car. One time the man got out of the car with a screwdriver in his hand. Hernandez stayed on the phone with the 911 dispatcher until the police arrived. Hernandez watched as the man got out of the red car for the last time and saw the police contact him as he tried to walk away.

Luis Arias also lived at the apartment building in October 2007. At that time, Arias was driving a red Volkswagen Jetta belonging to his cousin. Arias parked the vehicle at the apartment building in his designated parking stall between 5:00 and 6:00 p.m. on the evening in question. Arias recalled he locked the car when he parked it. The police contacted Arias about his car around 11:00 p.m. When Arias went to view the car the police asked him if anything was missing. Arias noticed the stereo was missing from the dashboard. The stereo had been placed in his daughter's backpack, which was lying on the driver's seat. An amplifier had been removed from underneath the passenger seat and placed inside his daughter's backpack. Beside his daughter's backpack was a "plastic bag with beers in it" that did not belong to Arias. When Arias parked the car earlier that evening, his daughter's backpack had been in the backseat.

A police officer apprehended Thorn on the public sidewalk adjacent to the apartment building between the building's courtyard and the street. When stopped by the officer, Thorn removed an object from his waistband and dropped it. A screwdriver was later recovered underneath an adjacent parked car. In the subject vehicle, police found a stereo, an amplifier inside a backpack, and two white plastic Safeway bags containing beer and items of clothing. An officer who was dispatched to the apartment building regarding the reported burglary in progress arrived to find a suspect (Thorn) already in custody. The officer realized he had seen Thorn about 20 to 30 minutes before he received the dispatch. The officer recalled that Thorn crossed the street in front of his patrol car two blocks from the apartment building while carrying two white plastic bags.

50 Hillcrest Drive, where the burglary occurred, is a V-shaped building. Five carports comprise the ground floor of the four-story residential apartment complex (the upper three floors are residential units). Each carport contains up to three parking stalls. The carports (not the individual parking stalls) are enclosed by solid brick walls on three sides with the front completely open to the paved courtyard in front of the building. To park, a

tenant turns his or her vehicle from the street into the courtyard and drives directly into a parking stall. There are three stairwells leading from the courtyard to the apartments above. There is a walkway on each floor that provides access for entry into the respective apartment units. The parking spaces in the carports are numbered but the numbers do not correlate to the numbers of the apartment units. Parking spaces are limited and are assigned by building management according to availability. Each carport has a sign above it saying "Tenant Parking Only."

DISCUSSION

## A. The Carport Is Protected by the Burglary Statutes

■ Section 459 provides in pertinent part that "[e]very person who enters any house, room, apartment, tenement . . . with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, 'inhabited' means currently being used for dwelling purposes, whether occupied or not." (§ 459.) Section 460 provides in pertinent part that "[e]very burglary of an inhabited dwelling house . . . is burglary of the first degree. [¶] All other kinds of burglary are of the second degree." (§ 460, subds. (a), (b).) A conviction for first degree burglary thus requires "entry" of an "inhabited dwelling house" with the intent to commit a felony. (§§ 459, 460.)

"[T]he term 'inhabited dwelling house' means a 'structure where people ordinarily live and which is currently being used for dwelling purposes. [Citation.] A place is an inhabited dwelling if a person with possessory rights uses the place as sleeping quarters intending to continue doing so in the future.' [Citations.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 776 [55 Cal.Rptr.2d 117, 919 P.2d 731] (*Cruz*).) Courts have broadly interpreted the term "inhabited dwelling house" to include a variety of structures and places (see *id.* at p. 777 [inhabited vessel qualifies as inhabited dwelling house]; *People v. Wilson* (1992) 11 Cal.App.4th 1483, 1488 [15 Cal.Rptr.2d 77] [tent qualifies as inhabited dwelling house]) in order to effect the legislative purpose of the burglary statutes—"to protect the peaceful occupation of one's residence" against intrusion and violence. (*Cruz, supra,* 13 Cal.4th at p. 775.)

Thorn contends on two grounds that the carport is not part of an inhabited building under the burglary statutes. First, he contends the carport areas in question are not "part of" the inhabited dwelling house, due to the manner in which they are configured in relation to the apartment building as a whole. Second, Thorn contends the carport falls outside the ambit of the burglary statutes because it did not carry a reasonable expectation of protection from intrusion. We address each of these arguments in turn.

"In determining whether a structure is part of an inhabited dwelling, the essential inquiry is whether the structure is 'functionally interconnected with and immediately contiguous to other portions of the house.' [Citation.]" (*People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1107 [92 Cal.Rptr.2d 236] (*Rodriguez*).) " 'Functionally interconnected' means used in related or complementary ways. 'Contiguous' means adjacent, adjoining, nearby or close. [Citations.]" (*Ibid.*)

Thorn presents no argument on the "immediately contiguous" requirement. However, the immediately contiguous requirement is easily met because here the carports are situated close to and directly underneath the occupied apartments themselves.

On the second requirement, Thorn argues there is no functional interconnection between the apartments and the carports because they are separated by common areas—the stairwells and the walkways—open to members of the public, not just to residents of the apartments. According to Thorn, this demarcates the apartments as "the place[s] used for residential activities" from the parking areas which are not used for residential activities. This argument misses the point.

The question is not whether the carports are used for "residential activities," but whether they are "functionally interconnected to and immediately contiguous to" the apartments used for "residential activities." (*Rodriguez, supra*, 77 Cal.App.4th at p. 1110 [defendant's contention that a home office attached to a residence "was not part of the family living space" missed the point because "[t]he question is not whether the specific area is used for sleeping or everyday living, but whether the area is functionally interconnected to and immediately contiguous to the residence, which is used for sleeping or everyday living"].) Indeed, courts have concluded in several cases that garage- or carport-type structures not normally considered part of the living space are nevertheless functionally connected to the dwelling for purposes of the burglary statutes. (See, e.g., *In re Edwardo V.* (1999) 70 Cal.App.4th 591, 594–595 [82 Cal.Rptr.2d 765] [attached garage at rear of duplex shared by tenants, not accessible from either duplex and entered only through an exterior door, was functionally interconnected to duplex]; *People v. Ingram* (1995) 40 Cal.App.4th 1397, 1402, 1404 [48 Cal.Rptr.2d 256], overruled on other grounds in *People v. Dotson* (1997) 16 Cal.4th 547, 560 [66 Cal.Rptr.2d 423, 941 P.2d 56] [garage was functionally connected to residence where it was used for storing garden tools and equipment, and shared roof with residence but was not directly connected to it]; *People v. Zelaya* (1987) 194 Cal.App.3d 73, 75–76 [239 Cal.Rptr. 289] [storage rooms in basement area under apartment house were functionally connected to the building's living quarters].)

Moreover, and contrary to Thorn's suggestion, a structure may be functionally interconnected to an inhabited dwelling even where access to the structure is from a common area. (See *People v. Woods* (1998) 65 Cal.App.4th 345, 347 [75 Cal.Rptr.2d 917] [defendant convicted of first degree burglary of a laundry room on the ground floor of a two-story, U-shaped apartment block, where entry to the individual apartments was via an unlocked open-air courtyard in the middle of the building].) The record here shows that the carports are located directly underneath the apartments and provide parking facilities for designated residents of the apartment complex only. These parking facilities allow the designated residents to drive their vehicles off the street and park in a covered location with convenient access to their living space in the apartments above via the communal stairways adjacent to the carports. In short, the use of the carports by the designated residents is inextricably related or complementary to their living space in the apartments above. Thus, the carports are "functionally interconnected" with the inhabited dwelling. (*Rodriguez, supra,* 77 Cal.App.4th at p. 1107 [" 'Functionally interconnected' means used in related or complementary ways."].)

We conclude, based upon our review of the record, that the carports are contiguous to and functionally interconnected with the inhabited apartment building. Accordingly, Thorn's first contention, that the carport falls outside the burglary statutes on the grounds it is not "part of" the inhabited dwelling house due to the manner in which it is situated in relation to the apartment building as a whole, must fail.

The second ground upon which Thorn contends the carports are not part of the inhabited building under the burglary statutes is that they do not carry a reasonable expectation of protection from intrusion. In this regard, Thorn asserts that the purpose of the burglary statutes is "to criminalize entry into places in which people have a reasonable expectation of protection from intrusion," and the carports are not that type of place because "[t]he car was no more protected than it would have been on the street." Thorn relies on *People v. Valencia* (2002) 28 Cal.4th 1 [120 Cal.Rptr.2d 131, 46 P.3d 920] (*Valencia*). While we agree with the premise of Thorn's argument, we arrive at a different conclusion based on the Supreme Court's teachings in *Valencia*.

In *Valencia*, the Supreme Court granted review "to determine whether penetration into the area behind a window screen amounts to an entry of a building within the meaning of the burglary statute when the window itself is closed and is not penetrated."[4] (*Valencia, supra,* 28 Cal.4th at pp. 3–4.) As its starting point, the court noted that California has "greatly expanded" the common law definition of burglary as the breaking and entering of a dwelling

---

[4] The defendant in *Valencia* "removed a window screen from a bathroom window of the . . . house and tried unsuccessfully to open the window itself." (*Valenica, supra,* 28 Cal.4th at p. 4.)

in the nighttime. (*Id.* at p. 7.) Under California's more expansive burglary law, " '[t]here is no requirement of a breaking; an entry alone is sufficient. The crime is not limited to dwellings, but includes entry into a wide variety of structures. The crime need not be committed at night.' " (*Ibid.*, citing *People v. Davis* (1998) 18 Cal.4th 712, 720–721 [76 Cal.Rptr.2d 770, 958 P.2d 1083].) Further, the court noted " ' "burglary remains an entry which invades a possessory interest in a building." [Citation.] . . . " 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.' [The burglary statute], in short, is aimed at the danger caused by the unauthorized entry itself." ' " (*Valencia*, at p. 7.)

■ With that in mind, the Supreme Court turned to the question of whether penetration into an area behind a window screen "amounts to an entry of a building." (*Valencia, supra,* 28 Cal.4th at p. 8.) The court stated that where "the outer boundary of a building for purposes of burglary is *not* self-evident, . . . a reasonable belief test generally may be useful in defining the building's outer boundary. Under such a test, in dealing with items such as a window screen, a building's outer boundary includes any element that encloses an area into which a reasonable person would believe that a member of the general public could not pass without authorization. . . . The test reflects and furthers the occupant's possessory interest in the building and his or her personal interest in freedom from violence that might ensue from unauthorized intrusion." (*Id.* at p. 11.)

Applying the reasonable belief test, the Supreme Court concluded "that a window screen is clearly part of the outer boundary of a building for purposes of burglary. A reasonable person certainly would believe that a window screen enclosed an area into which a member of the general public could not pass without authorization." (*Valencia, supra,* 28 Cal.4th at p. 12.) On this point, the court noted that "even the minimal entry effected by penetration into the area behind a window screen—without penetration of the window itself—is 'the type of entry the burglary statute was intended to prevent . . .' [citation] [because] [s]uch an entry 'violates the occupant's possessory interest in the building [and]' also threatens the ' " 'germination of a situation dangerous to personal safety.' " ' " (*Id.* at p. 13.)

Under the reasonable belief test as described in *Valencia*, the question here is whether Thorn's penetration into the open carport was an entry of the building for purposes of the burglary statute. Applying the reasonable belief test, we conclude that the open entrance to the carport marked the outer boundary of the apartment building for purposes of burglary. The open carport here is directly analogous to the area behind the window screen in *Valencia* in that a reasonable person certainly would believe that the carport "enclosed an area into which a member of the general public could not pass without authorization." (*Valencia, supra*, 28 Cal.4th at p. 12.) Indeed, a member of the general public such as Thorn had no business entering the carport at issue here. It is enclosed on three sides. It is not open at either end or in such other way that it could be reasonably viewed as a throughway or a shortcut to some point beyond. It constitutes a private, individually designated parking space in which its occupant has a possessory interest for the purpose of parking his or her vehicle as well as storing personal possessions. Indeed, that the carport at issue here was recognized as "an area into which a member of the general public could not pass without authorization" (*ibid.*) is further evidenced by the reaction of the residents when they saw Thorn lurking therein—they concluded he was up to no good and immediately called the police. Thorn's entry into the carport, therefore, violated both "the occupant's possessory interest" and his or her "personal interest in freedom from violence that might ensue from unauthorized intrusion." (*Id.* at p. 13.) Thus, as in *Valencia*, Thorn's entry into the carport amounts to "an entry of the building within the meaning of the burglary statute." (*Ibid.*)

 Nor is our analysis on this point swayed by the fact that there was no physical barrier to Thorn's entry of the carport. In *Valencia*, the Supreme Court commented on language in an appellate court case "that might be understood to cast the reasonable belief test in terms of 'whether a reasonable person would believe' that any given element of a building 'provides some [physical] protection against unauthorized intrusions.' [Citation.]" (*Valencia, supra*, 28 Cal.4th at pp. 11–12.) The court stated the "latter quoted language might be appropriate if the offense of burglary continued to require unlawful breaking as well as entering. In that event, an element of a building would have to be something that could protect against breach. But, as we have stated most recently in *Davis*, burglary now entails only unlawful entry. [Citation.]" (*Id.* at p. 12.) Accordingly, the court reiterated that the reasonable belief test "properly is phrased in terms of whether a reasonable person would believe that the element of the building in question enclosed an area into which a member of the general public could not pass without authorization." (*Ibid.*)[5]

---

[5] Nor does our analysis run afoul of the Supreme Court's admonition in *Valencia* that "in defining the outer boundary of a building for purposes of burglary, the reasonable belief test necessarily refers only to an element of a building that reasonably can be viewed as part of *the*

■ In sum, a reasonable person would view the carport as an "enclosed . . . area into which a member of the general public could not pass without authorization." (*Valencia, supra*, 28 Cal.4th at p. 12.) Accordingly, under the reasonable belief test, Thorn's entry of the carport with felonious intent constitutes first degree burglary.

## B. *Burglary Instructions*

The trial court instructed the jury as follows using a modified version of CALCRIM No. 1700: "The defendant is charged in count 3 with first degree burglary (burglary of an inhabited dwelling house) in violation of Penal Code section 460(a). To prove that the defendant is guilty of this crime, the People must prove that: 1. The defendant entered an inhabited dwelling house; AND 2. When he entered the inhabited dwelling house, he intended to commit theft or auto burglary. To decide whether the defendant intended to commit theft or auto burglary, please refer to the separate instructions given to you on those crimes. A burglary was committed if the defendant entered with the intent to commit theft or auto burglary. The defendant does not need to have actually committed theft or auto burglary as long as he entered with the intent to do so. The People do not have to prove that the defendant actually committed theft or auto burglary. Under the law of burglary, a person enters a building if some part of his or her body penetrates the area inside the building's outer boundary. A carport that is attached to an inhabited dwelling house is part of the inhabited dwelling house. The People allege that the defendant intended to commit theft or auto burglary. You may not find the defendant guilty of burglary unless you all agree that he intended to commit one of those crimes at the time of the entry. You do not all have to agree on which one of those crimes he intended."

The trial court also instructed the jury with a modified version of CALCRIM No. 1701 as follows: "Burglary is divided into two degrees. If you conclude that the defendant committed a burglary, you must then decide the degree. First degree burglary is the burglary of an inhabited dwelling house. A carport that is attached to an inhabited dwelling house is part of the inhabited dwelling house. A house is inhabited if someone uses it as a dwelling, whether or not someone is inside at the time of the alleged entry.

*building's* outer boundary. The test does not encompass any feature that is not such an element, such as a lawn, courtyard, unenclosed patio, or unenclosed balcony that may be located in front of or behind a building; nor does the test purport to define any such feature as part of a building's outer boundary." (*Valencia, supra*, 28 Cal.4th at p. 11, fn. 5.) The carport area is not located in front of or behind the apartment building. Rather, it is an integral part of the apartment building because it comprises the entire ground floor of the apartment building, is roofed by the apartments above, shares common walls with the apartments above, structurally supports the apartments built above it, and lies entirely within the plane of the apartment building structure.

All other burglaries are second degree. The People have the burden of proving beyond a reasonable doubt that the burglary was first degree burglary. If the People have not met this burden, you must find the defendant not guilty of first degree burglary."

Thorn objects to the following language in the above instructions: "A carport that is attached to an inhabited dwelling house is part of the inhabited dwelling house." Thorn asserts this language "instruct[s] the jury that by traversing the parking spaces, [he] (1) entered (2) an inhabited dwelling house. By thus removing two essential questions from the jury," Thorn continues, "the trial court impermissibly directed a verdict of guilty on the element of entry of a building—second degree burglary—and the element of habitation—first degree burglary." We disagree.

First, we reject Thorn's suggestion that his claim of instructional error is controlled by *People v. Early* (1997) 56 Cal.App.4th 753 [65 Cal.Rptr.2d 527] (*Early*). In *Early*, the trial court instructed the jury in the following manner: " 'Now, if you find the defendant guilty of burglary . . . don't worry about the degree of burglary. . . . [I]f you should find beyond a reasonable doubt the defendant's [*sic*] guilty of burglary, it's first-degree burglary as a matter of law, so don't worry about that." (*Early, supra*, 56 Cal.App.4th at p. 757.) The Court of Appeal concluded that by telling the jury "not to 'worry about' the type of structure allegedly entered because the structure was the 'dwelling house' of the victim, . . . the trial court . . . , in essence, directed a verdict on an element of first degree burglary, i.e., that the structure entered be an 'inhabited dwelling house.' " (*Id.* at pp. 757–758.) The instructional language at issue is simply not comparable to that in *Early*. Here, the instructional language employed by the trial court did not remove the type of structure and, consequently, the degree of burglary from the jury's consideration.[6] Rather, the trial court instructed the jury that to find appellant guilty of first degree burglary it had to find he burgled an inhabited dwelling house, that a house is inhabited if someone uses it as a dwelling, and that a carport that is attached to an inhabited dwelling house is part of the inhabited dwelling house. In this regard, the trial court's instruction is very similar to the language of the burglary instruction approved in *People v. Fox* (1997) 58 Cal.App.4th 1041 [68 Cal.Rptr.2d 424] (*Fox*).

---

[6] Nor did the trial court's instruction direct the jury on the element of entry. The jury had to find that Thorn entered the carport before the trial court's instruction that "[a] carport that is attached to an inhabited dwelling house is part of the inhabited dwelling house" even came into play.

In *Fox*, the trial court trial instructed the jury in pertinent part that " '[w]here a garage is attached to an inhabited dwelling house and is, therefore, not a separate structure, it is considered to be a *part of* the inhabited structure.' (Italics added.)" (*Fox, supra*, 58 Cal.App.4th at p. 1047.) On appeal, Fox argued that the trial court's instruction "improperly usurped the jury's function and directed a verdict as to the 'inhabited dwelling' element of first degree burglary." (*Ibid.*) The appellate court rejected this contention. "Under these instructions," the court reasoned, "the jury was still required to find that the 'structure' entered by Fox was 'inhabited.' In addition, the jury was required to determine whether the garage was 'attached,' and thus an integral part of the structure. Only after making these factual determinations could the jury find Fox guilty of first degree burglary. Had the jury determined the structure was not inhabited or the garage was not attached, it would have been obligated to find Fox committed second degree burglary. Accordingly, the trial court's instruction did not preclude the jury from deciding a material issue of fact." (*Ibid.*)

Similarly, the jury here was required to determine whether Thorn entered an inhabited dwelling house with the intent to commit theft before it could return a guilty verdict on first degree burglary. As in *Fox, supra*, 58 Cal.App.4th 1041, the jury could not return such a guilty verdict unless it found that the apartment structure entered by Fox was inhabited and that the carport was attached to the inhabited structure. Here, as in *Fox*, had the jury determined the apartment structure was not inhabited or the garage was not attached to it, it would have been obligated to return a not guilty verdict on the first degree burglary charge. Therefore, the trial court's instruction did not direct a guilty verdict on two essential elements of first degree burglary as asserted by Thorn.

■ Second, we reject Thorn's suggestion that the trial should have instructed the jury on the principles of the reasonable belief test discussed in *Valencia*. In *Valencia*, the Supreme Court applied the reasonable belief test in order to determine the issue of whether "penetration into the area behind a window screen amounts to entry of a building within the meaning of the burglary statute even when the window itself is closed and is not penetrated." (*Valencia, supra*, 28 Cal.4th at p. 16.) However, the Supreme Court clarified that application of the reasonable belief test to determine whether penetration of a particular part of a building amounts to an entry for purposes of the burglary statute is a question of law for the court and not a question of fact for the jury. (*Ibid.*) Accordingly, appellant's claim of instructional error fails on this ground as well.

## DISPOSITION

We have concluded that the carport area at issue here is protected by the burglary statutes under both the "functionally-interconnected-with-and-immediately-contiguous-to" test and the "reasonable belief" test. In addition, we discern no error in the jury instructions. Accordingly, the judgment is affirmed.

McGuiness, P. J., and Siggins, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 2, 2009, S176452.