Filed 7/29/14  P. v. Coolidge CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048920 |
| v. | (Super. Ct. No. 13NF0879) |
| ORLANDO KEITH COOLIDGE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James Edward Rogan, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Orlando Keith Coolidge of first degree burglary of an inhabited residence (Pen. Code, §§ 459, 460)[1], and assault with a deadly weapon, not a firearm (§ 245, subd. (a)(1)). The trial court sentenced Coolidge to prison for three years on the assault conviction and a concurrent term of two years on the burglary conviction.

On appeal, Coolidge argues the evidence was insufficient to support the residential burglary conviction because there was no showing he intended to commit a felony when he entered Armando Rodriguez's open garage. We disagree with this contention, and for the reasons stated below, affirm his conviction.

FACTS

Rodriguez was living with his fiancée, Marlene Gonzalez, in a condominium (condo) in Fullerton. His condo had an attached garage that opened to an alley. One afternoon, Rodriguez took his dogs on a walk around the condo complex and then returned to his condo where he met up with his neighbor, Taylor Gasper, and Gasper's brother-in-law.

Gasper had a wiffle ball bat and wiffle ball, and the group began hitting the ball down the alley so the dogs could "fetch" it. While playing "fetch" with the dogs in the alley, the group noticed Coolidge approaching them on a bicycle. Rodriquez recognized Coolidge because Coolidge had been in the area several times in the past year. As Coolidge approached Rodriguez, Gasper, and Gasper's brother-in-law in the alley, the group stopped the game of "fetch" and stepped to the side of the alley to allow Coolidge to ride past.

Instead of riding by the group, Coolidge went out of his way to ride towards Gasper, and ultimately ran over his foot. With an aggressive tone, Coolidge asked Gasper, "'Are you going to move the fuck out of my way?'" Gasper told Coolidge, "'There's plenty of room for you to go around, just go around.'" Coolidge then twice

---

[1] All further statutory references are to the Penal Code.

2

said, "'Just move the fuck out of my way.'" After stating this the second time, Coolidge reached down and snatched the wiffle ball bat out of Gasper's hand and said, "'Now I got the bat,' motherfucker."

At this point, Rodriquez told Coolidge, "'It's a plastic wiffle ball bat. What are you going to do with that? Just give it back, go on your way.'" Coolidge then threw his bike to the ground, and repositioned himself with the bat in a combative stance equidistant between Gasper and Rodriguez. Gasper's brother-in-law emerged from the garage with a shovel in hand and stated, "'We don't want to have any issues here, just leave.'"

Coolidge handed the bat back to Gasper and said to Rodriguez, "'Well, you need to be taught a lesson.'" Gasper walked into his garage, retrieved a machete, and stood just inside the edge of his garage door. Rodriquez saw Gasper with the machete and told Coolidge, "'Look, dude, you're going to get hurt here.'" Coolidge aggressively responded, "'Somebody needs to teach you a lesson.'" Coolidge then picked up his bicycle and walked away. Rodriguez and his neighbors remained in the alley conversing about the events that had just taken place.

Several hours later, Rodriquez was in his garage working on his car with the garage door open. Gonzalez, later joined Rodriquez in the garage. Rodriquez had previously told Gonzalez about the wiffle ball bat incident that took place in the alley. While Rodriquez was working underneath his car, Gonzalez saw a man approaching the garage and she asked Rodriquez if it was the same man who was involved in the wiffle ball bat incident. Rodriguez got out from underneath the car, poked his head out of the garage, and saw Coolidge was pushing a shopping cart towards his garage. When Coolidge saw Rodriquez, Coolidge forcefully pushed the shopping cart aside and approached Rodriquez. Rodriquez immediately turned and retrieved a small work knife from his work bench.

3

Rodriquez turned back towards his garage door and saw Coolidge standing several feet inside of the garage in a hostile manner. Rodriquez noticed Coolidge was concealing a tire puncture tool with his right index finger. Coolidge told Rodriquez, "'Now it's just you and me. I'm going to teach you a lesson." Both Rodriguez and Gonzalez asked Coolidge to leave. Because Coolidge did not leave, Rodriguez instructed Gonzalez to get behind him for protection.

While they were still in the garage, Rodriguez took a few steps towards Coolidge to make him back out of the garage. Rodriquez kept telling Coolidge to leave, however Coolidge only backed up a few feet to the alleyway outside the garage. Coolidge gestured towards Rodriquez to invite a fight.

Rodriguez instructed Gonzalez to go upstairs and call the police, however a group of neighbors who were watching the altercation had already telephoned 911. As Gonzalez exited the garage to join the group of neighbors, Coolidge lunged at Rodriquez in an attempt to stab him, however Rodriquez was able to evade the attack. Rodriquez then advanced towards Coolidge and aggressively told Coolidge, "'You need to get out of here.'" Rodriquez then swung at Coolidge with his knife, but Coolidge dodged the attack.

Gonzalez approached Rodriquez from his right side while talking on the telephone to the police. As Rodriguez turned to look at Gonzalez, Coolidge lunged at Rodriguez and stabbed him in his left armpit. After getting stabbed, Rodriguez advanced towards Coolidge and repeatedly said, "'Get the fuck out of here.'" As Rodriquez advanced, Coolidge looked pleased and maintained his aggressive stance. Coolidge told Rodriguez, "I'm going to get you."

Gonzalez again approached Rodriquez from the right, and Rodriquez turned his head to tell her to get back. At this moment, Coolidge again lunged at Rodriquez and stabbed him in the upper left collarbone. Coolidge smirked at Rodriguez and said,

4

"'Gotch you twice, nigga.'"  Rodriquez then swung his knife at Coolidge but only caught his sleeve.

As the two men approached the end of the alley, a police cruiser pulled up. The officer exited his vehicle, drew his pistol, and ordered both men to drop their weapons and get on the ground.  The officers detained both men and had Rodriguez sit down on the curb.  As Coolidge was being walked to the police cruiser, he looked at Rodriquez and said, "'Bitch-ass nigger, I'm going to get you.'"

At trial, the defense presented four witnesses to demonstrate inconsistencies in the prosecution's case.  Coolidge relied on those inconsistencies to argue Rodriguez and Gonzalez exaggerated the events and he acted in self-defense.

DISCUSSION

Coolidge argues there was insufficient evidence to support his conviction for residential burglary because there was no showing he intended to commit a felony when he entered Rodriquez's open garage.  Rather, Coolidge asserts it was only after he and Rodriguez both exited the garage that he decided to engage Rodriguez in combat. We disagree.

"When reviewing the sufficiency of evidence to support a criminal conviction, we ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  [Citation.]  We view the whole record in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence to determine whether the record discloses substantial evidence.  [Citations.]  'Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it.'  [Citation.]  [¶]  Because intent is rarely susceptible of direct proof, it may be inferred from all the facts and circumstances disclosed by the evidence. [Citations.]  Whether the entry was accompanied by the requisite intent is a question of

5

fact for the jury.  [Citation.]  'Where the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal.' [Citation.]"  (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245 (*Kwok*).)

Section 459 provides in pertinent part that "[e]very person who enters any house, room, apartment, tenement . . . with intent to commit grand or petit larceny or any felony is guilty of burglary.  As used in this chapter, 'inhabited' means currently being used for dwelling purposes, whether occupied or not."  (§ 459.)  Section 460 provides in pertinent part that "[e]very burglary of an inhabited dwelling house . . . is burglary of the first degree.  [¶]  All other kinds of burglary are of the second degree."  (§ 460, subds. (a)-(b).)  A conviction for first degree burglary thus requires "entry" of an "inhabited dwelling house" with the intent to commit a felony.  (§§ 459, 460.)

Carports attached to a residence have been held to be functionally interconnected to the residence and thus part of the inhabited dwelling house.  (*People v. Thorn* (2009) 176 Cal.App.4th 255, 263 [carport area part of inhabited dwelling where it comprised entire ground floor of apartment building and roofed by apartments above]; *In re Christopher J.* (1980) 102 Cal.App.3d 76, 80 [carport constituted inhabited dwelling where attached to residence and walled on one side and roofed].)

In this case, the record contains circumstantial evidence from which the jury could reasonably conclude Coolidge possessed the required felonious intent at the time he entered Rodriguez's garage.  He entered the garage, took an aggressive stance, and concealed a weapon.  Further, upon entering Coolidge told Rodriguez that he needed to be taught a lesson.  The jury could reasonably infer Coolidge returned after the previous wiffle ball bat altercation because Coolidge wanted to assault Rodriquez with the tire puncture tool he held in his hand.  Thus, contrary to Coolidge's claim otherwise, his intent to commit a felony did not arise *after* he entered Rodriquez's open garage. (*People v. Holt* (1997) 15 Cal.4th 619, 669-670.)

6

Additionally, even if Coolidge's intent was to draw Rodriguez out of the garage to attack him in the alley, the felonious intent requirement of burglary was still met. (*Kwok, supra,* 63 Cal.App.4th 1236.) In *Kwok*, the court opined, "[I]ndeed, the phrase 'enters . . . with intent' has been uniformly construed to mean that the intent to commit the theft or felony must exist at the time of entry, not that the target crime must be committed then and there. [Citation.]" (*Id.* at p. 1246.) The court continued, "If the jury can reasonably infer from the defendant's conduct . . . that he . . . entered a building in order to facilitate commission of . . . felony, we conclude the defendant need not intend to commit the target crime in the same building or on the same occasion as the entry in order to be guilty of burglary." (*Id.* at p. 1248.) Thus, there was sufficient evidence from which the jury could reasonably conclude Coolidge intended to commit a felony when he entered Rodriquez's open garage.

## DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

RYLAARSDAM, J.

IKOLA, J.

7