[No. A073267. First Dist., Div. Four. July 16, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LOUIS EARLY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B.-D. and III.

**COUNSEL**

Ann Hopkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Susan E. Myster, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REARDON, J.**—A jury convicted appellant Robert Louis Early of first degree burglary. He was sentenced to a term of 25 years to life in state prison. (See Pen. Code,[1] §§ 459, 667, subd. (e)(2).) Early appeals, contending, inter alia, that the jury was misinstructed and that this matter must be remanded for resentencing pursuant to *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]. We affirm the conviction, but remand for resentencing.

[1]All statutory references are to the Penal Code.

## I. FACTS

On March 29, 1994, appellant Robert Louis Early allegedly burglarized the Dublin home of Karen Stewart. Early and Michael Duran Apodaca were apprehended by police after the two men ran away from them near the Stewart home. Early had jewelry and coins in his pocket that had come from the house. When he was questioned, he told police investigating the burglary that he committed the burglary and that he was a dope fiend looking to "make a score" in order to buy heroin. He stated that he and Apodaca had gained entry by a side door.

Early was charged by information with first degree burglary enhanced by allegations of five prior convictions, all of them for completed or attempted first degree burglaries. (See §§ 459, 667, subds. (a), (e)(2).) His motion to set aside the enhancement allegations in the information was denied. (See § 995.) He moved to strike four of the five prior conviction allegations, also without success.

At trial, Apodaca admitted burglarizing the house. He had previously pled guilty to the burglary and was serving a prison sentence by the time he testified at Early's trial. He testified that he had not met Early before the date of the burglary. He needed someone to drive him to commit a burglary. He did not tell Early of his purpose. Instead, Apodaca told Early that he needed a ride to his girlfriend's house to pick up some things that belonged to him. He traded heroin for the ride. They both used some heroin before they left together. When they arrived at the house, Apodaca went in, but Early did not. When he came out of the house with the items he had taken, he gave some jewelry and money to Early. Then, he saw the police and the two of them ran.

Early also testified in his own defense. His testimony was consistent with that offered by Apodaca—that he gave Apodaca a ride to his girlfriend's house in exchange for heroin, that Apodaca alone entered the house and that when he came out of the house, he gave Early some items to pocket. He ran from the police because he was under the influence of heroin, with tracks on his arm while he was on parole. When he gave his statement to police, he told the officer "whatever he want[ed] to hear" in order to pacify him.

Another defense witness, an expert psychologist, recounted Early's similar description of the burglary and the reason why he ran from police. He testified that Early told him that he did not know that Apodaca intended to burglarize the house at any time before he actually went into the house. The psychologist testified that Early had told him that he was addicted to heroin

and that he burglarized homes in order to support his habit. Early had admitted having committed multiple burglaries in the past.

The prosecution put on evidence suggesting that Early and Apodaca committed the burglary together, because they were seen earlier on the day of the crime checking out houses. Ultimately, the jury found Early guilty of burglary and found all the allegations charged to be true. His motions to strike the prior conviction findings and his challenge to the sentencing scheme as cruel or unusual punishment and as discriminatory enforcement were denied. (See § 1385.) He was sentenced to a term of 25 years to life in state prison. (See § 667, subd. (e)(2).)

## II. JURY INSTRUCTIONS

### A. *Residential Burglary—Constitutional Issue*

■ Early contends that his first degree burglary conviction must be reversed because the trial court erroneously instructed the jury on an element of residential burglary. Specifically, Early correctly observes that to constitute first degree burglary the structure entered must be "an inhabited dwelling house." (§ 460.) He argues that the trial court, through its instructions, erroneously removed this element from the jury's consideration. We agree that error occurred but conclude that the error was harmless.

At trial, the court instructed the jury as follows:

"Now, what's a burglary.

"Burglary is defined as any person who enters a structure of the type shown by the evidence in this case[.]

"Don't worry about the kind of structure.

"In other words, the crime of burglary is defined as every person who enters the home of Karen Stewart with the specific intent to steal, take, and carry away the personal property of another with the specific intent to deprive the owner permanently of her property is guilty of burglary.

"In other words, if you take the property and plan to give it back, that's not a burglary.

"But burglary is the entrance of this type of home with the specific intent to steal, take, and carry away the property with the intent to permanently deprive.

"The essence of a burglary is entering such [a] place with the specific intent. The burglary is committed as soon as entry is made, regardless of whether the intent thereafter is carried out. Therefore, in order to prove the commission of the crime of burglary, you need certain elements.

"Element number one, you have to enter a dwelling house, and the house of Karen Stewart is a dwelling house which qualifies.

"Two, at the time of the entrance, the person has to have the specific intent to steal, take, and carry away someone else's property and intend to deprive the owner permanently of such property.

"And, again, the specific intent to commit burglary must be proved beyond a reasonable doubt. The specific intent to permanently deprive must be proved beyond a reasonable doubt.

". . . . . . . . . . . . . . . . . . . . . . .

"Now, if you find the defendant guilty of burglary, Ladies and Gentlemen, don't worry about the degree of burglary. I'm going to instruct you that if you should find beyond a reasonable doubt the defendant's [*sic*] guilty of burglary, it's first-degree burglary as a matter of law, so don't worry about that."

■ It is a well-established constitutional requirement that the prosecution prove every fact necessary to constitute the crime with which a criminal defendant is charged. (*In re Winship* (1970) 397 U.S. 358, 364 [90 S.Ct. 1068, 1072-1073, 25 L.Ed.2d 368].) Consequently, a trial court may not direct a jury to convict, regardless of how overwhelming the evidence may appear to be. (*United States* v. *Martin Linen Supply Co.* (1977) 430 U.S. 564, 572-573 [97 S.Ct. 1349, 1355, 51 L.Ed.2d 642].) To do so violates the defendant's Sixth Amendment right to a jury trial. (See *Duncan* v. *Louisiana* (1968) 391 U.S. 145, 155-156 [88 S.Ct. 1444, 1450-1451, 20 L.Ed.2d 491].) As stated by our Supreme Court, "[t]he rule prohibiting verdicts directed against an accused emanates from the guarantee of due process and the right to a jury trial." (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 725 [224 Cal.Rptr. 719, 715 P.2d 680].)

■ Reasonably construed, the trial court's instructions told the jury not to "worry about" the type of structure allegedly entered because the structure

was the "dwelling house" of the victim, Karen Stewart. In so instructing, the trial court removed from consideration and, in essence, directed a verdict on an element of first degree burglary, i.e., that the structure entered be an "inhabited dwelling house." This was error of a constitutional magnitude. (See *Duncan* v. *Louisiana, supra,* 391 U.S. 145.) The question remains, however, whether the error is reversible per se or subject to a harmless error analysis under *Chapman* v. *California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].

■ In *Rose* v. *Clark* (1986) 478 U.S. 570 [106 S.Ct. 3101, 92 L.Ed.2d 460], the United States Supreme Court applied a "harmless beyond a reasonable doubt" standard in determining the prejudicial effect of an erroneous jury instruction dealing with rebuttable presumptions, observing that there is a "strong presumption" that a constitutional violation will be subject to harmless error analysis. (*Id.* at p. 579 [106 S.Ct. at p. 3106].) As stated in *Arizona* v. *Fulminante* (1991) 499 U.S. 279, 306 [111 S.Ct. 1246, 1263, 113 L.Ed.2d 302], ". . . the Court has applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless." Specifically, the court has repeatedly applied a harmless error analysis to instructional errors of a constitutional magnitude. (See, e.g., *Yates* v. *Evatt* (1991) 500 U.S. 391, 402 [111 S.Ct. 1884, 1892, 114 L.Ed.2d 432] [erroneous burden-shifting instruction]; *Carella* v. *California* (1989) 491 U.S. 263, 266 [109 S.Ct. 2419, 2421, 105 L.Ed.2d 218] [erroneous mandatory presumption instruction]; *Pope* v. *Illinois* (1987) 481 U.S. 497, 502-504 [107 S.Ct. 1918, 1921-1923, 95 L.Ed.2d 439] [erroneous instruction on element of offense].) The courts of this state have done so as well: "It is appropriate and constitutionally permissible to analyze instructional error with regard to an element of an offense by the harmless error standard of *Chapman* . . . ." (*People* v. *Brenner* (1992) 5 Cal.App.4th 335, 339 [7 Cal.Rptr.2d 260] [specific intent crime defined as requiring only general intent], and cases cited therein; see also *People* v. *Avila* (1995) 35 Cal.App.4th 642 [41 Cal.Rptr.2d 484] [failure to instruct on element of kidnapping].)

In *United States* v. *Gaudin* (1995) 515 U.S. 506 [115 S.Ct. 2310, 132 L.Ed.2d 444], the court held that the materiality of a false statement must be submitted to the jury rather than decided by the trial judge. In upholding the reversal of the conviction by the Ninth Circuit Court of Appeals, the court stated: "The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged. The trial judge's refusal to allow the jury to pass on the 'materiality' of Gaudin's false statements infringed that right."

(*Id.* at pp. 522-523 [115 S.Ct. at p. 2320].) Nowhere in the *Gaudin* majority opinion, however, is there any discussion of whether the error is reversible per se or subject to a harmless error analysis. This absence of discussion is apparently attributable to the fact, as observed in the concurring opinion, that "the Government has not argued here that the error in this case was either harmless or not plain," (*id.* at p. 526 [115 S.Ct. at p. 2321]) and the further disclaimer that "[t]he Court today has no occasion to review the Court of Appeals' conclusion that the constitutional error here 'cannot be harmless.' 28 F.3d, at 951." (*Id.* at p. 526 [115 S.Ct. at p. 2322].)

In *People* v. *Kobrin* (1995) 11 Cal.4th 416 [45 Cal.Rptr.2d 895, 903 P.2d 1027], decided a few months after *Gaudin*, our Supreme Court reversed a perjury conviction where the trial court refused to allow the jury to determine the requisite element of materiality and instead instructed the jury that if the statements were made they were "material." (*Id.* at p. 421.) As in *Gaudin*, the court did not hold that such an error was reversible per se. Unlike the majority opinion in *Gaudin*, the court expressly acknowledged what it was not deciding: "In light of our findings on this record, we need not decide whether, and under what other circumstances, a reviewing court may determine the omission of instruction on an element was harmless beyond a reasonable doubt." (*Id.* at p. 428, fn. 8.)

While this appeal was pending, the United States Supreme Court decided *Johnson* v. *U.S.* (1997) __ U.S. __ [117 S.Ct. 1544, 137 L.Ed.2d 718].[2] In *Johnson*, defendant was charged with making a false material declaration under oath before a grand jury. (18 U.S.C. § 1623.) At trial, the district court informed the jury that the element of "materiality" was a question for the court to decide and that the court had determined defendant's statement to be material. Defendant did not object to this instruction in the trial court. On appeal to the Eleventh Circuit, defendant argued that the trial court's failure to submit materiality to the jury rendered her conviction invalid under *Gaudin*. The circuit court affirmed the judgment of conviction. Under the Federal Rules of Criminal Procedure, the failure to object in the trial court waives the error for purposes of appeal (Fed. Rules Crim. Proc. rule 30, 18 U.S.C.), unless the error or defect affects "substantial rights" (*id.* rule 52(b), 18 U.S.C.; *United States* v. *Olano* (1993) 507 U.S. 725 [113 S.Ct. 1770, 123 L.Ed.2d 508]). The circuit court held that the error "did not affect the 'substantial rights' of the defendant," basing its conclusion on the court's "independent review of the record and determination that there was 'overwhelming' evidence of materiality and that '[n]o reasonable juror could conclude that Johnson's false statements about the source of the money . . .

---

[2]The parties were asked to file, and did file, letter briefs discussing *Johnson*.

were not material to the grand jury's investigation.'" (*Johnson* v. *U.S.*, *supra*, __ U.S. at p. __ [117 S.Ct. at pp. 1547-1548].)

The Supreme Court, after observing that materiality "was essentially uncontroverted at trial and has remained so on appeal [fn. omitted]," affirmed the circuit court: "On this record there is no basis for concluding that the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' Indeed, it would be the reversal of a conviction such as this which would have that effect. 'Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.' R. Traynor, The Riddle of Harmless Error 50 (1970). No 'miscarriage of justice' will result here if we do not notice the error, [citation], and we decline to do so." (*Johnson* v. *U.S.*, *supra*, __ U.S. at p. __ [117 S.Ct. at p. 1550].)

 In the present case, as in *Johnson*, the evidence was uncontroverted at trial, and is not challenged on this appeal,[3] that the structure entered was an "inhabited dwelling house." As in *Johnson*, the same error occurred: In *Johnson*, the trial court removed the element of "materiality" from the jury's consideration; here, the trial court removed the element of "inhabited dwelling house" from the jury's consideration. In *Johnson*, upon a review of the record, the court concluded that the error was not one that " ' "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." ' " (*Johnson* v. *U.S.*, *supra*, __ U.S. at p. __ [117 S.Ct. at p. 1550].) Application of this standard is wholly inconsistent with a reversible per se rule. In sum, the *Johnson* court rejected the argument that the error was "structural" requiring automatic reversal (*Duncan* v. *Louisiana*, *supra*, 391 U.S. 145) by affirming the judgment on the basis that the error did not affect "substantial rights."

Accordingly, we apply a harmless error analysis to the error at issue and conclude, upon a review of the record, that no reasonable juror could find that the structure entered was anything other than an "inhabited dwelling house." (*Chapman* v. *California*, *supra*, 386 U.S. 18.)

B.-D.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3]In his opening brief, Early describes this evidence as "uncontradicted and not subject to dispute."

*See footnote, *ante*, page 753.

## III. Remand for Sentencing*

. . . . . . . . . . . . . . . . . . . . . . . . .

The matter is remanded for resentencing in accordance with this opinion. In all other respects, the judgment of conviction is affirmed.

Poché, Acting P. J., and Hanlon, J., concurred.

A petition for a rehearing was denied August 12, 1997.

---

\*See footnote, *ante*, page 753.