Filed 1/12/16  P. v. Paredes CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>EDGAR PAREDES,<br><br>     Defendant and Appellant. | B250169<br><br>(Los Angeles County<br>Super. Ct. No. KA098646) |

APPEAL from a judgment of the Superior Court of Los Angeles County, George Genesta, Judge.  Affirmed as modified and remanded with instructions.

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Edgar Paredes appeals from a judgment of conviction on three counts of lewd or lascivious conduct with a child, and one count each of continuous sexual abuse of a child, sodomy with a child under the age of 10 years, and oral copulation of a child under the age of 10 years. He argues that there is no substantial evidence to support the latter two convictions. He also argues that the trial court erroneously instructed the jury on the intent required for continuous sexual abuse of a child and failed to instruct the jury that lewd or lascivious conduct with a child is a lesser included offense of continuous sexual abuse of a child. He also contends the trial court erred by admitting evidence of his prior sexual offenses. Finally, he requests correction of his presentence custody credits. We agree that Paredes's presentence custody credits must be corrected, but conclude that substantial evidence supports the convictions for sodomy and oral copulation of a child under the age of 10 years, and that the trial court did not commit any prejudicial instructional or evidentiary error. We therefore modify the judgment and affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Victim and Her Family*

The minor victim, K., was born in January 1996. She has an older sister and a younger sister. When K. was four years old, her father refused to let her mother continue living with him and his daughters because of drug use by K.'s mother. K., her father, grandmother, and two sisters then moved in with the father's sister, her husband (Paredes), and their son in a house in West Covina (the West Covina house). This was the first of two times that K. would live in the West Covina house, both times with these same family members.

Where K. lived at various times, and in particular when she lived at the West Covina house, is important to the issues in this appeal. K. did not recall precisely when she first moved into the West Covina house or how long she lived there the first time, but

2

she thought the time concluded near the end of her first-grade year. She then lived for approximately two and a half years with her father, grandmother, and sisters in a house in Hacienda Heights, though she continued to visit her relatives at the West Covina house and occasionally spent the night there. K. and her father, sisters, and grandmother moved back into the West Covina house in 2005, when K. was in fourth grade. K. recalled that this time she lived in the West Covina house for "a year," during which she celebrated her 10th birthday. K. moved out of the West Covina house for good in the second semester of fifth grade, in late January or early February 2007. After then living in Whittier with another of her father's sisters for "almost a year," K. moved to the high desert area in October 2007 to live with her mother, who was no longer using drugs. K. still lived with her mother at the time of trial.

Although K.'s father lived at the West Covina house when K. lived there, he was often absent. K.'s grandmother or her uncle, Paredes, would babysit her.[1]

B.    *The Crimes*

1.    *Paredes's Sexual Conduct with K.*

Paredes first touched K. inappropriately when she was in preschool. K. did not remember where she lived at that time, but her grandmother had picked her up from preschool and left her alone at the West Covina house with Paredes. When Paredes asked if K. wanted to know a secret, she said she did. He then placed her on a table, and began to rub his hands on her chest, buttocks, and vagina. Paredes then removed K.'s clothes, turned her over so that she rested on her hands and knees on the table, and inserted his penis into her anus. Afterwards, Paredes told her to go color in a coloring book and watch television. Paredes continued to have anal sex with K. while she was in preschool.

---

[1]    At trial, K. often testified generally about circumstances or events that occurred while she lived at the West Covina house, without restricting her statements to the first or second time she lived there. Unless otherwise indicated, our descriptions of K.'s experiences while she lived at the West Covina house apply to both time periods she lived there.

During the first time K. lived in the West Covina house, Paredes would rub his hands on her breasts, vaginal area, and buttocks, perform anal and oral sex on her, and have her perform oral sex on him. On one occasion, K. sat on Paredes's lap on the sofa in the living room while Paredes inserted his penis into her anus. These incidents "happened repeatedly" and "on different occasions," in the West Covina house, both when she lived there and when she was visiting. When K. lived at the West Covina house, she performed oral sex on Paredes "about" every day. It became a routine, "like getting ready for the day," and she could not remember the exact number of times. K. recalled one specific instance where she performed oral sex on Paredes behind a Christmas tree in the den of the West Covina house. This occurred on Christmas Eve while she was living at the West Covina house the second time.

K. also testified that Paredes had anal sex with her every day when she lived at the West Covina house. She thought the last time he had anal sex with her was "probably when [she] was ten" years old because she moved out of the West Covina house shortly after she turned 11 years old. In all, from the time K. was in preschool to the last time Paredes had anal sex with her, there were only occasional time periods of a couple of weeks when he did not have anal sex with her.

Regarding the frequency of "sex acts" between her and Paredes, K. testified at trial: "It just happened so regularly. It got down to him making a hand motion at me for me to go towards him and I knew okay, here we go again. It came so regularly, so all the time, I can't remember certain occasions. It just kind of meshes together like it happened so many times." She described a number of these incidents in detail without specifying or being able to recall exactly when they occurred, including an occasion when she performed oral sex on Paredes in the bathroom of a pet store, several occasions when he showed her pornography on a computer in the West Covina house while touching her breasts, buttocks, and vaginal area, an occasion when they had anal sex in the West Covina house and Paredes's penis slipped into her vagina, and an occasion when Paredes caused her to bleed when having anal sex with her.

4

The last time K. saw Paredes she was living with her mother and had visited the West Covina house to celebrate her 12th birthday. During the visit, Paredes sat down beside K., rubbed her leg, and moved his hand toward her inner thigh. She pushed him away, and he asked whether something was wrong. "I know what you are," she said. Eventually, when K. was in high school, she disclosed to a school counselor what Paredes had done to her, and the counselor reported it to the police.

K.'s older sister is three years older than K. The older sister recalled that, when she lived at the West Covina house as a child, Paredes showed her pornographic videos on the computer approximately 10 times. She recalled that she and her younger sisters moved out of the West Covina house in late January 2007.

2.     *Paredes's Sexual Conduct with M.S.*

M.S. is K.'s cousin and is about 10 years older than K. When M.S. was nine or ten, she lived for a time at the West Covina house with Paredes and his wife, who are her uncle and aunt. She also visited them regularly when she was five or six years old and they were living in a condominium in Whittier.

On several occasions when M.S. visited the condominium in Whittier, Paredes touched her inappropriately. Once, when she and Paredes were in the condominium's swimming pool, he held her between his legs, against his crotch, and would not let her go. On another occasion, he took her into a bedroom alone and closed the door. He then removed her clothes and had her rest on the bed on her hands and knees while he stood behind her and inserted his fingers into her vagina. On another occasion he had her sit near him to watch him masturbate, and while he masturbated he took her hand and placed it on his penis. On that occasion, Paredes asked her to perform oral sex on him, but she refused. Paredes also showed M.S. pornographic videos when she visited the condominium.

Later, when M.S. lived at the West Covina house, Paredes sometimes exposed his penis to her when they were alone. He also came into the room where she slept, stood beside the bed where she lay awake, and masturbated in front of her.

5

When M.S. was 20 years old, she told her mother what Paredes had done to her. M.S. disclosed this because she did not want it to happen to anyone else in her family. She was particularly concerned about K. because of the way K. acted around Paredes. Some time after M.S.'s disclosure, she received a letter from K. describing Paredes's sexual conduct with her. In the letter K. apologized to M.S. because she mistakenly thought her experiences with Paredes preceded M.S.'s experiences with him, and she believed that by refusing to continue engaging in sexual conduct with Paredes she had caused him to "go after" M.S. M.S. explained to K. that she (K.) was mistaken and that what happened to her (M.S.) was not K.'s fault.

M.S. eventually reported her experiences with Paredes to the police and gave them the letter she received from K. In a telephone call set up and monitored by the police, M.S. confronted Paredes about what he had done to her, and he admitted he had touched her inappropriately.

### 3. *The Investigation of M.S.'s Claims*

In 2007 Detective Greg Hamilton interviewed Paredes concerning M.S.'s allegations against him.[2] In the interview Paredes admitted to sexual conduct with M.S. beginning when she was six or seven years old, including "feeling her behind" when she hugged him and holding her close against him in the condominium swimming pool while he rubbed his crotch against her. He also showed her a pornographic video "so that she could pick whatever she wanted to do." When she chose having him put his penis in her vagina, he said he could not do that, and suggested he put it in her anus. Because he knew his penis would not fit, however, he put his fingers in her anus and rubbed his penis against her. He denied he ever put his finger in her vagina, nor could he recall ever putting her hand on his penis. He did recall once asking M.S. to perform oral sex on him,

---

[2]     At trial the prosecution played a video recording of the interview and introduced the transcript into evidence.

but she refused.  He also recalled her walking in on him once while he was masturbating in a bathroom.  Paredes denied touching any other children sexually.[3]

C.     *The Charges in This Case*

The People charged Paredes with committing the following offenses against K.: three counts of lewd or lascivious conduct with a child under the age of 14 years (Pen. Code § 288, subd. (a)),[4] continuous sexual abuse of a child under the age of 14 years (§ 288.5, subd. (a)), sodomy with a child under 10 years of age (§ 288.7, subd. (a)), and oral copulation of a child under 10 years of age (§ 288.7, subd. (b)).  The People also alleged that K. was under 18 years of age at the time of the offenses, and that prosecution of the offenses commenced prior to K.'s 28th birthday, as required by the former limitations period provided for in section 801.1, subdivision (a).[5]  Paredes pleaded not guilty, and the case went to trial in June 2013.  At that time, K. was 17 years old.

D.     *The Forensic Evidence*

Malinda Wheeler, a nurse with experience performing forensic examinations relating to sexual assaults, performed a non-acute sexual assault examination of K. in

---

[3]     At the trial in this action, the court took judicial notice in the presence of the jury that in September 2007 Paredes pleaded guilty to the offense of lewd or lascivious conduct with a child based on his conduct with M.S., was sentenced to three years in prison for that offense, and was in custody from November 15, 2007 until he was released on parole on June 2, 2010.  Court records admitted into evidence showed that Paredes had been charged with two counts of lewd or lascivious conduct with a child, that he had pleaded guilty to one, and that the other count had been dismissed.

[4]     Undesignated statutory references are to the Penal Code.

[5]     The Legislature has since amended section 801.1, subdivision (a), to require that prosecution commence prior to the victim's 40th birthday.  (Stats. 2014, ch. 921, § 1.)

7

June 2012.[6] Wheeler did not observe any healed injuries to K.'s vagina or anus and found the exam results of those areas were "normal." She testified, however, that it is "very uncommon" to find healed injuries to those areas after years of healing. She also testified that child-abuse experts find scars in adults or children after sodomy only when there was some form of surgical intervention, like suturing, and that even an injury to the anus that initially causes bleeding can heal without any evidence of a scar. She also cited research articles concluding that anal dilation, or the lack of it, is not a reliable indicator of whether a child has been sodomized. In Wheeler's opinion, the results of her examination of K. were "very consistent" with the history of sexual abuse that K. and the detective investigating K.'s claims against Paredes had reported.

Dr. Earl Fuller, a retired board-certified obstetrician-gynecologist called as a defense medical expert, reviewed the results of Wheeler's examination of K., including photographs of K.'s anal and vaginal areas. Dr. Fuller testified that in his opinion the results of the examination were not consistent with K.'s allegations against Paredes. Dr. Fuller stated, "If you add up what [K.] says happened to her in the two-and-a-half-year period, she would have had 1700 sodomies. That's impossible. You're not going to have a perfectly normal sphincter if you had 500 or 300 sodomies."[7] He also stated that "you can't sodomize children 200, 300, 500 times and not have damage." In particular, based on K.'s allegations, including that she bled on one occasion when Paredes had anal sex with her, Dr. Fuller said he would have expected Wheeler's examination of K. to reveal some scarring and more laxity of the sphincter. He admitted on cross-examination,

---

[6]     Wheeler explained that an acute forensic examination is one performed within three to five days of the reported sexual abuse, for the primary purpose of collecting DNA and looking for injury, while a non-acute examination is one performed after that time, for the purpose of looking for healed injury.

[7]     These comments refer to K.'s statement, during an interview with the investigating detective, that Paredes had anal sex with her two to three times a day when she lived at the West Covina house and perhaps to her statement, during an interview with the deputy district attorney, that she estimated Paredes had anal sex with her over 300 times. K. testified that she recalled making both statements.

however, that it was possible that K. had scars that Wheeler did not see and the photographs did not show because no one had performed a biopsy, that anal laxity alone is not a reliable indicator of whether a child was sodomized, and that it is possible for an adult to have anal sex with a child without causing any injury.

E.      *The Verdict and Sentence*

The jury found Paredes guilty on all counts and found true the allegations required by the limitations period under section 801.1, subdivision (a).  The court sentenced Paredes to a determinate term of 22 years in state prison, followed by an indeterminate term of 40 years to life.  The court awarded Paredes 365 days of presentence custody credit and 54 days of conduct credit.  Paredes filed a timely notice of appeal.

**DISCUSSION**

A.      *Substantial Evidence Supports Paredes's Convictions for Sodomy and Oral Copulation with a Child Under the Age of 10 Years*

Paredes argues that the evidence was insufficient to support his convictions for sodomy with a child under 10 years of age (§ 288.7, subd. (a)) and oral copulation with a child under 10 years of age (§ 288.7, subd. (b)).  To evaluate this contention, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We

9

resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; accord, *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

As Paredes notes, section 288.7 requires that the child victim must be "10 years of age or younger" at the time the defendant commits the proscribed acts, which the Supreme Court has construed to mean that the child must not yet have reached his or her 11th birthday. (See *People v. Cornett* (2012) 53 Cal.4th 1261, 1268, 1275.) K. turned 11 in January 2007. Section 288.7, however, enacted as part of the Sex Offender Punishment, Control, and Containment Act of 2006, became effective September 20, 2006. (Stats. 2006, ch. 337, §§ 1, 9, 62; *People v. Cornett*, *supra*, 53 Cal.4th at p. 1267.) Thus, the trial court correctly instructed the jury that, in order to find Paredes guilty on the two counts charged under section 288.7, the jury had to find that Paredes committed the acts alleged in those counts "sometime during the time period of September 20, 2006 and January [ ] 2007." Paredes now argues that there was insufficient evidence that he committed the charged acts within that time period.

Paredes first argues that, under the evidence in this case, the relevant time period was actually much narrower than September 20, 2006 to January 2007. Paredes cites K.'s testimony that, after moving out of the West Covina house for the second time, she lived with her father's sister in Whittier for "almost a year," and then moved in with her mother on October 27, 2007. Paredes contends this establishes that K. moved out of the West Covina house for the second time in October 2006. And because, as the People concede, there was no evidence that Paredes engaged in sodomy or oral copulation with K. after she moved out of the West Covina house the second time, Paredes contends that his convictions under section 288.7 require substantial evidence that he engaged in the alleged acts of sexual conduct between September 20, 2006 and October 2006.

10

The testimony on which Paredes relies for this timeline, however, is not as conclusive as he suggests. For example, a jury could reasonably have understood K.'s testimony that she lived with an aunt in Whittier for "almost a year" before moving in with her mother to mean that she lived with her aunt for less than 12 full months. More important, there is abundant evidence that K. moved out of the West Covina house not in October 2006, but in late January or early February 2007. K. testified that the second time she lived at the West Covina house she moved out "a little bit after I was 11," which she confirmed was "in about late January, early February of 2007." Her older sister also testified that she, K., and the younger sister moved out of the West Covina house "around probably late January" of 2007. And K.'s father testified that he and his daughters moved out of the West Covina house in approximately February 2007. Thus, the jury could have reasonably concluded that K. did not move out of the West Covina house until after her 11th birthday, in January 2007, and that therefore she was living at the West Covina house for the entire period of September 20, 2006 to January 2007. (See *People v. Manibusan*, *supra*, 58 Cal.4th at p. 87 [we "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence"].)

These facts are significant because K. testified that Paredes had both oral and anal sex with her on a daily basis while she lived at the West Covina house. Because children subjected to incidents of sexual abuse over a substantial period "may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents," testimony like K.'s, although sometimes called "generic," is sufficient to sustain a conviction for sexual abuse of a child so long as that testimony includes certain essential information. (*People v. Jones* (1990) 51 Cal.3d 294, 305, 315-316 (*Jones*).) Specifically, the victim must describe (1) "the *kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g. lewd conduct, intercourse, oral copulation or sodomy)," (2) "the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping')," and (3) "the

11

*general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us') to assure the acts were committed within the applicable limitation period." (*Id.* at p. 316; accord, *People v. Graff* (2009) 170 Cal.App.4th 345, 365, fn. 16; see *People v. Anderson* (2012) 208 Cal.App.4th 851, 892 [*Jones* "eliminated any distinction between generic and non-generic testimony in the prosecution of resident child molesters"].) "Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Jones*, at p. 316.)

K.'s testimony meets these requirements. She described the kind of acts committed with sufficient specificity to identify them as sodomy and oral copulation,[8] and, by testifying that Paredes engaged in both kinds of acts on a daily basis during a period that included September 20, 2006 to January 2007, she provided sufficient evidence of one count of sodomy and one count of oral copulation during the applicable period. (See *Jones*, *supra*, 51 Cal.3d at p. 316; cf. *People v. Moore* (1989) 211 Cal.App.3d 1400, 1409-1412 [victim's testimony that undifferentiated rapes occurred "almost every night" during three-month period was sufficient to sustain conviction on one count of rape during that period].)

K. also testified about one specific instance of oral copulation during the second time she lived at the West Covina house, behind a Christmas tree on Christmas Eve. During an interview with the detective investigating her case, the transcript of which the trial court admitted into evidence, K. stated that this incident occurred on Christmas Eve when she was in fifth grade, which was in 2006. Thus, the jury reasonably could have

---

[8]    "Sodomy is sexual conduct consisting of contact between the penis of one person and the anus of another person." (§ 286, subd. (a).) "Oral copulation is the act of copulating the mouth of one person with the sexual organ or anus of another person." (§ 288a, subd. (a); see *People v. Dement* (2011) 53 Cal.4th 1, 41 ["'[a]ny contact, however slight, between the mouth of one person and the sexual organ of another person constitutes oral copulation'"].)

12

concluded the specific instance of oral copulation K. recalled occurred during the period of September 20, 2006 to January 2007.

Paredes contends that K.'s testimony regarding the number of times he sodomized her was so incredible that, as a matter of law, it is not sufficient to support his conviction for violating section 288.7, subdivision (a). He cites *People v. Mayberry* (1975) 15 Cal.3d 143 for the proposition that "the appellate court will not uphold a verdict based upon evidence which is inherently improbable and thus may reject evidence believed by the trier of fact if there exists either a physical impossibility that it is true or the falsity of the evidence is apparent without resorting to inference or deduction." (See *id.* at p. 150 ["[t]o warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions"].) Paredes argues that no reasonable trier of fact could believe K.'s statement, initially made to the detective investigating her case, that Paredes had anal sex with her "two to three times a day" when she lived at the West Covina house. He cites Dr. Fuller's calculation that K.'s testimony works out to 1,700 acts of sodomy, which Fuller concluded was "not even . . . close to believable."

The jury, however, did not have to believe that Paredes sodomized K. "two to three times a day" during the applicable period. The jury only had to conclude that Paredes did so once. And the jury reasonably could have reached that conclusion by inferring that Paredes sodomized K. routinely enough that, given the length of the applicable period, there was no reasonable doubt he did so at least once during that period. (See *People v. Moore*, *supra*, 211 Cal.App.3d at pp. 1409-1412.) Substantial evidence, independent of K.'s statement to the investigating detectives, supports such an inference. For example, K. testified that anal sex with Paredes "happened every day" while she lived at the West Covina house and that between the first time and the last time he had anal sex with her there were only periods of "a couple weeks" when it did not occur. Wheeler testified that K.'s statements that Paredes sodomized her routinely was

13

"very consistent" with the results of her examination of K.[9] (See *People v. Elliott* (2012) 53 Cal.4th 535, 585 ["[u]nless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction"]; *People v. Miranda* (2011) 199 Cal.App.4th 1403, 1418 [testimony of non-victim witness provided sufficient evidence to support convictions for attempted rape and forcible sexual penetration].)

Thus, even assuming Dr. Fuller's testimony establishes that K.'s "two to three times a day" statement to the investigating detective was statistically unlikely or even physically impossible, there was other substantial evidence that Paredes sodomized K. at least once during the applicable period. To the extent the jury considered K.'s statement that Paredes sodomized her "two to three times a day," the jury may well have regarded it as an exaggeration, a figure of speech, or an instance of inaccurate memory that was nevertheless consistent with the gist of her other testimony that Paredes sodomized her almost daily with only occasional respites. (See *People v. Mejia* (2007) 155 Cal.App.4th 86, 98-99 [victim's contradictory testimony about the number of times she was molested "merely raised a credibility issue for the jury to resolve"].) Substantial evidence supports Paredes's convictions for sodomy and oral copulation with a child under the age of 10 years.

B.      *The Court Did Not Commit Prejudicial Error in Instructing the Jury on the Intent Required for Continuous Sexual Abuse*

The trial court instructed the jury on the intent required for the crimes with which Paredes was charged. The court instructed the jury pursuant to CALCRIM No. 252 that several crimes, including continuous sexual abuse, required general criminal intent. The court instructed the jurors: "For you to find a person guilty of these crimes, that person must not only commit the prohibited act, but must do so with wrongful intent. A person

---

[9]     Wheeler testified that K. told her she was sodomized "routinely" and that the investigating detective told her K. claimed she was sodomized daily until age 10.

14

acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime." The court also instructed the jury that several other crimes, including committing a lewd act on a child, required a specific intent or mental state. The court instructed the jurors: "For you to find a person guilty of this crime, that person must not only intentionally commit the prohibited act, but must do so with a specific intent. The act and the specific intent required are explained in the instruction for that crime."

The court then instructed the jury pursuant to CALCRIM No. 1120 on the elements of continuous sexual abuse of a child. The court stated, in relevant part: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant lived in the same home with a minor child; [¶] 2. The defendant engaged in three or more acts of lewd or lascivious conduct with the child; [¶] 3. Three or more months passed between the first and last acts; [¶] AND [¶] 4. The child was under the age of 14 years at the time of the acts."[10]

The "lewd or lascivious" acts element requires the People to prove beyond a reasonable doubt that the defendant had the specific intent of sexual gratification. (*People v. Garcia* (2014) 229 Cal.App.4th 302, 312, fn. 3; *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1293.) Paredes contends, the People concede, and we agree that the court erred when it instructed pursuant to CALCRIM No. 252 that the continuous sexual abuse charge required only general criminal intent. Therefore, the issue is whether the error was prejudicial.

---

[10] Section 288.5, subdivision (a), provides that continuous sexual abuse of a child occurs when "[a]ny person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense . . . or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense."

15

We review an instructional error concerning whether a crime requires general or specific intent under the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).  (See *People v. Sandoval* (2007) 41 Cal.4th 825, 838 ["an erroneous jury instruction that omits an element of the offense is subject to harmless error analysis" under *Chapman*]; *People v. Early* (1997) 56 Cal.App.4th 753, 758 ["'[i]t is appropriate and constitutionally permissible to analyze instructional error with regard to an element of an offense by the harmless error standard of *Chapman*'"]; *People v. Brenner* (1992) 5 Cal.App.4th 335, 339 (*Brenner*) [applying *Chapman* where the court failed to instruct on specific intent].)  Under that standard, the error is harmless if "the reviewing court determines 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' [Citation.]  When there is '"a reasonable possibility"' that the error might have contributed to the verdict, reversal is required.  [Citation.]  . . . . [¶]  The reviewing court conducting a harmless error analysis under *Chapman* looks to the 'whole record' to evaluate the error's effect on the jury's verdict.  [Citation.]  We note in this regard that a *Chapman* harmless error analysis for instructional error typically includes review of the strength of the prosecution's case.  [Citation.]  Indeed, the harmless error inquiry for the erroneous omission of instruction on one or more elements of a crime focuses *primarily* on the weight of the evidence adduced at trial.  . . .  [S]uch an error is deemed harmless when a reviewing court, after conducting a thorough review of the record, 'concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.' [Citations.]"  (*People v. Aranda* (2012) 55 Cal.4th 342, 367.)

Here, a review of the record, and the prosecution's case in particular, leaves no reasonable doubt that the specific intent of sexual gratification required to establish the "lewd or lascivious" acts in CALCRIM No. 1120 was "uncontested and supported by overwhelming evidence." (*People v. Aranda*, *supra*, 55 Cal.4th at p. 367.)  K. testified that Paredes had anal and oral sex with her and fondled her breasts, buttocks, and vagina. The specific intent of sexual gratification in those acts cannot "reasonably be disputed." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 406; see *ibid*. [where victim testified defendant

16

"repeatedly molested her, fondling her breasts and genitals and forcing her to touch his penis," the requisite intent for committing lewd act "could not reasonably be disputed"]; *People v. Lopez* (2010) 185 Cal.App.4th 1220, 1229 [the intent of a touching "'must be inferred from all the circumstances,'" including "'the identity of the perpetrator, the nature of the touching, [and] the absence of an innocent explanation'"].)  At trial, Paredes did not argue otherwise, and on appeal Paredes concedes that if he "did the acts alleged by [K.], his intent could not reasonably be disputed."  Therefore, we conclude beyond a reasonable doubt that the error did not contribute to the jury's verdict.  (See *People v. Aranda*, *supra*, 55 Cal.4th at p. 367; *Brenner*, *supra*, 5 Cal.App.4th at pp. 339-340 [failure to instruct on specific intent was harmless beyond a reasonable doubt where the conduct in question was "absolutely unambiguous as to its intent"]; *People v. Dollar* (1991) 228 Cal.App.3d 1335, 1343-1344 [same].)

### C.    *The Trial Court Did Not Err in Failing To Instruct on Lewd or Lascivious Conduct as a Lesser Included Offense of Continuous Sexual Abuse*

Paredes also argues that the trial court erred by not instructing the jury that lewd or lascivious conduct with a child is a lesser included offense of the charge of continuous sexual abuse of a child.[11]  The trial court did not err, however, because there was no substantial evidence to support giving an instruction on lewd or lascivious conduct as a lesser included offense of continuous sexual abuse in this case.

The People concede, and we agree, that under the circumstances of this case lewd or lascivious conduct with a child is a lesser included offense of continuous sexual abuse of a child.  While the continuous sexual abuse of a child may be based on three or more acts of "substantial sexual conduct" *or* three or more acts of "lewd or lascivious conduct,

---

[11]    Section 288, subdivision (a), provides in relevant part that "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ."

17

as defined in Section 288" (§ 288.5, subd. (a)),[12] the People charged Paredes with committing continuous sexual abuse of K. by engaging in at least three acts of substantial sexual conduct *and* at least three acts of lewd or lascivious conduct. Moreover, as noted, the court's instruction on the elements of continuous sexual abuse required a finding that Paredes committed three or more lewd or lascivious acts within the applicable period, and the court did not instruct on the "substantial sexual conduct" alternative. Thus, as the offense was charged, presented, and defined in the instructions, Paredes could not have committed continuous sexual abuse without having committed a lewd or lascivious act under section 288, subdivision (a). (See *People v. Medina* (2007) 41 Cal.4th 685, 687-688 ["'a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser'"].)

A trial court must instruct the jury sua sponte on a lesser included offense if there is substantial evidence from which the jury could reasonably conclude that the defendant committed the lesser offense but not the greater. (*People v. Whalen* (2013) 56 Cal.4th 1, 68, disapproved of on another ground by *People v. Romero* (2015) 62 Cal.4th 1, 44, fn. 17; *People v. Manriquez* (2005) 37 Cal.4th 547, 584.) "We review de novo a trial court's failure to instruct on a lesser included offense [citation], and in doing so we view the evidence in the light most favorable to the defendant. [Citation.]" (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) "'[I]n a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which

---

[12]     "Continuous sexual abuse of a child . . . prohibits anyone who has continuing access to a child from engaging in three or more acts of substantial sexual conduct or lewd and lascivious conduct with the child. [Citation.] Substantial sexual conduct refers to certain acts (penetration, oral copulation or masturbation) but does not require any kind of specific intent. [Citations.] However, to commit a lewd and lascivious act, the perpetrator must harbor the intent to arouse the sexual desires of the child or him or herself. [Citations.]" (*People v. Garcia* (2014) 229 Cal.App.4th 302, 312, fn. 3.)

18

are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818, 836].' [Citations.]" (*People v. Beltran* (2013) 56 Cal.4th 935, 955.) "'[U]nder *Watson*, a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' [Citation.]" (*Ibid.*)

Paredes argues that the jury reasonably could have concluded that during the period for which he was charged with continuous sexual abuse, January 21, 2002 to September 19, 2006, he instead committed only the offense of lewd or lascivious conduct. Paredes points to K.'s testimony that she did not live at the West Covina house from the end of first grade through the end of third grade, or from June 2003 through June 2005. Paredes argues that this narrowed the period under consideration for the charge of continuous sexual abuse "to the period between January 21, 2002 through June 2003 and from June 2005 through September 19, 2006," because the trial court instructed the jury that the People had to prove that Paredes lived with K. when he committed the lewd or lascivious acts. Paredes also cites Dr. Fuller's testimony that K.'s claims about the frequency with which she was sodomized were not credible. From this evidence, Paredes argues that the jury reasonably could have concluded that during the applicable period Paredes committed only one or two lewd or lascivious acts, or committed three or more such acts but only over a period of less than three months.

Viewing this evidence in the light most favorable to Paredes, there is no substantial evidence from which the jury could reasonably have concluded that Paredes committed lewd or lascivious conduct but not continuous sexual abuse. For one thing, narrowing the relevant time to two periods of more than one year each does not seem particularly significant considering K.'s testimony that Paredes engaged in sexual conduct with her on a daily basis when she lived at the West Covina house. For another, Dr. Fuller's professional incredulity concerned only K.'s testimony about how often Paredes had anal sex with her, not her testimony about how often Paredes engaged in other lewd or lascivious acts with her, such as oral sex, which she testified also took place daily when she lived at the West Covina house. Therefore, the trial court did not err in

19

failing to instruct the jury sua sponte on lewd or lascivious conduct as a lesser included offense of continuous sexual abuse.

Moreover, even if the court had erred in failing to instruct on the lesser included offense, any such error was harmless. Paredes argues that the failure to instruct on the lesser included offense prejudiced him because the jury was forced to choose between conviction and acquittal on the charge of continuous sexual abuse, but the evidence "suggested a middle ground." The evidence, however, left no such "middle ground." K. testified that Paredes engaged in sexual conduct with her on a daily basis while she lived at the West Covina house, a period that, even according to Paredes, covered approximately two and a half years. Even assuming the jury credited Dr. Fuller's testimony, Dr. Fuller provided no evidence to contradict K.'s claims of daily oral sex and other sexual acts. Nothing in the record indicates it is "reasonably probable" Paredes would have obtained a more favorable result had the court instructed on the lesser included offense.

D. *The Trial Court Did Not Abuse Its Discretion by Admitting Evidence of Paredes's Other Sexual Offenses*

Paredes argues that the court abused its discretion under Evidence Code section 352 and deprived him of due process and a fair trial when, pursuant to Evidence Code section 1108, the court admitted evidence of Paredes's sexual offenses against M.S. We review a trial court's ruling under Evidence Code section 352 for abuse of discretion and will not disturb the ruling """except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]"' [Citation.]" (*People v. Williams* (2013) 58 Cal.4th 197, 270-271; see *People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1116.)

Evidence Code section 1108 provides an exception to the general rule in section 1101 that character evidence, often referred to as "propensity" evidence, is inadmissible to prove a person's conduct on a specified occasion: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of

20

another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1108, subd. (a), see § 1101, subd. (a).) Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The California Supreme Court has "held that propensity evidence may be considered in sex crime cases under section 1108 without violating the due process clause because section 1108's incorporation of the section 352 balancing test prevents an unfair trial." (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1328, citing *People v. Falsetta* (1999) 21 Cal.4th 903, 910-922.)

The People filed a motion in limine to admit evidence of Paredes's prior sexual offenses against M.S., including M.S.'s testimony and Paredes's statements to Detective Hamilton about M.S.[13] After finding that Evidence Code section 1108 applied, the court weighed the probative value of the evidence against the risks identified in Evidence Code section 352 and determined that exclusion of the evidence was not warranted. The court found that the evidence was probative because of the similarities in Paredes's conduct toward M.S. and K., including exposing them to pornography, fingering the buttocks, and penetrating the anus. The court also noted that evidence of Paredes's sexual conduct toward M.S. would be relatively brief, and thus would not consume an undue amount of time. The court also observed that Paredes's conduct toward M.S. was significantly less egregious than his alleged conduct with K., in that the former involved digital penetration of the anus while the latter involved sodomy, which reduced the risk that the evidence would unduly inflame the jury's emotions or prevent them from properly weighing and

---

[13]     The motion also sought to admit evidence that Paredes showed K.'s older sister pornography on the computer at the West Covina house. The court admitted this evidence, and Paredes does not challenge this ruling on appeal.

separating the evidence of the charged conduct against K. Thus, after weighing the appropriate considerations, the court exercised its discretion under Evidence Code section 352 and admitted the evidence.

The trial court did not abuse its discretion. While a trial court conducting the balancing required by Evidence Code section 352 must consider "'the unique facts and issues of each case,'" several factors "stand out as particularly significant" when the court weighs whether to exclude evidence presented pursuant to section 1108. (*People v. Nguyen*, *supra*, 184 Cal.App.4th at pp. 1116-1117.) These factors include "(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time. [Citation.] A trial court balances this first factor, i.e., the propensity evidence's probative value, against the evidence's prejudicial and time-consuming effects, as measured by the second through fifth factors. [Citation.]" (*Id.* at p. 1117.) The trial court's ruling articulated and engaged in this balancing. If anything, the court might have taken note of additional similarities between the charged and uncharged conduct, which further contributed to the probative value of the evidence under Evidence Code section 1108, including that both victims were nieces of Paredes, were about the same age when he engaged in sexual acts with them, and were living in or visiting his residence when he committed the acts.

Paredes argues that the evidence of his conduct with M.S. was extremely inflammatory because it showed "an on-going pattern of long-term abuse" and therefore portrayed Paredes as "a serial child molester." Exactly. The very purpose of Evidence Code section 1108 is to give "'the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes' [citation]" (*People v.*

22

*Avila* (2014) 59 Cal.4th 496, 515), and any tendency of the evidence to portray Paredes as "a serial child molester" was not unduly prejudicial. (See *People v. Hollie* (2010) 180 Cal.App.4th 1262, 1277 ["""[t]he prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence"""].) Nor should the trial court have excluded evidence of Paredes's conduct with M.S. because it was unnecessary to prove intent under Evidence Code section 1101, subdivision (b),[14] as Paredes argues. The trial court properly ruled that the evidence was admissible under Evidence Code section 1108 to prove that Paredes committed the charged offenses.

Finally, Paredes argues that the evidence confused and unduly prejudiced the jury because it included his admission to at least five instances of molesting M.S., when he was ultimately convicted of only one count of lewd or lascivious conduct with her. He contends that jurors would have wanted "to punish him for what he 'got away with' in regard to [M.S.]." We are not persuaded the jurors were confused or prejudiced in this way. First, because the conduct described by K. was considerably more inflammatory than Paredes's conduct with M.S., it is doubtful the jury was unduly motivated by evidence of the latter. (See *People v. McCurdy* (2014) 59 Cal.4th 1063, 1099 [evidence of uncharged sexual offense for which defendant was not convicted did not make it more likely that the jury would punish for that offense because evidence of charged offense was more inflammatory].) Second, the People avoided this line of argument in their closing. (See *People v. Hollie, supra,* 180 Cal.App.4th at p. 1277 ["[u]pon review of the arguments of counsel and the jury instructions, we are persuaded that the jury was not

---

[14] Evidence Code section 1101, subdivision (b), provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

23

inclined to improperly punish defendant for the uncharged acts" for which he had not been convicted].) Third, the court instructed jurors they could consider evidence of Paredes's offenses against M.S. only to help them determine whether Paredes committed the charged acts against K., and "not [to] consider this evidence for any other purpose." We presume the jurors followed that instruction. (See *ibid.* ["[t]he jury was given an effective instruction by the trial court to consider the evidence only for proper limited purposes, and we must presume the jury adhered to the admonitions"].) Therefore, the trial court did not abuse its discretion in allowing evidence of Paredes's sexual offenses against M.S., nor did the court deprive Paredes of due process or a fair trial.

E.   *Paredes's Presentence Custody Credits Must Be Corrected*

Paredes contends, and the People agree, that his presentence custody credits should be corrected. Paredes was arrested on July 11, 2012 and sentenced on July 17, 2013. He is entitled to presentence custody credit for every day of that time, including the days of arrest and sentencing. (See *People v. Cooper* (2002) 27 Cal.4th 38, 40; *People v. Browning* (1991) 233 Cal.App.3d 1410, 1412; *People v. Smith* (1989) 211 Cal.App.3d 523, 526.) The trial court awarded Paredes only 365 days of actual custody credit, rather than the 372 days the court should have awarded under section 4019, and the court awarded him 15 percent of 365 days, or 54 days, for conduct credit under section 2933.1. Therefore, Paredes is entitled to an additional seven days of actual custody credit and an additional day of conduct credit.

**DISPOSITION**

We modify the judgment to give appellant an additional seven days of actual custody credit and one additional day of conduct credit. We remand the case to the superior court with directions to prepare a corrected abstract of judgment to reflect the award of 427 days of presentence custody credits (372 actual days plus 55 days of

24

conduct credits) and to send a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


SEGAL, J.

We concur:


PERLUSS, P. J.


BLUMENFELD, J. [*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.