Filed 3/2/21  P. v. Garcia CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHNNY COTTA GARCIA,<br><br>Defendant and Appellant. | F078563<br><br>(Kings Super. Ct.<br>No. 18CMS1514C)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ross K. Naughton, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant was convicted of several crimes in connection with a home invasion robbery he committed alongside his codefendant. He argues the court erred in failing to give a unanimity instruction, and contends the matter must be remanded for resentencing in light of Senate Bill No. 136 (2019–2020 Reg. Sess. (Senate Bill 136)) and Senate Bill No. 1393 (2017–2018 Reg. Sess. (Senate Bill 1393)). The Attorney General concedes the matter must be remanded for resentencing in light of Senate Bill 136.

We reject defendant's contention concerning unanimity and accept the Attorney General's concession. As a result, we remand for resentencing and otherwise affirm the judgment.

## BACKGROUND

In an amended information filed September 10, 2018, the Kings County District Attorney charged defendant Johnny Cotta Garcia and his brother Michael Lee Garcia with first degree burglary, with a person present (count 1; Pen. Code, § 459),[1] home invasion robbery (count 2; § 211), and assault by means likely to produce great bodily injury (count 3; § 245, subd. (a)(4).)[2] The information also alleged defendant had suffered two strike priors; two serious felony priors and four prior prison terms.

A jury convicted defendant on all three felony counts. Defendant admitted the prior conviction and prison term allegations.

The court sentenced defendant to 27 years to life in prison on count 2 (§§ 213, subd. (a)(1)(A) & 1170.12, subd. (c)(2)(A)(i)); plus 10 years for the two prior serious felony enhancements (§ 667, subd. (a)); plus two years for two of the prior prison term

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The information further alleged defendant committed misdemeanor possession of methamphetamine (count 4; Health & Saf., § 11377, subd. (a)) and misdemeanor driving on a suspended or revoked license (count 5; Veh. Code, § 14601.1, subd. (a).) Those charges are not at issue in this appeal.

enhancements[3] (§ 667.5.) The court sentenced defendant to an additional 25-year-to-life term on count 1, plus 12 years for the same prior enhancements described above; and another 25-year-to-life term on count 3, plus 12 years for the same prior enhancements described above. The court stayed the terms for counts 1 and 3 and their respective enhancements under section 654.

### FACTS

Stephanie Byares lived with her boyfriend Nathan Mayer on South 10th Avenue in Hanford. On April 25, 2018, at around 10:00 a.m., Byares saw defendant working on a white car in her driveway. At around 2:00 p.m., Byares left to go to the store and saw the same white car following her.[4] Byares told Mayer about the incident. Mayer "just got out of the hospital that day" because he had been bitten by a black widow spider on his arm, hand and foot. Mayer's left hand and right foot were "bandaged up" as a result.

At around 8:30 or 9:00 p.m., Byares was painting in her kitchen and Mayer was asleep in the bedroom. Byares heard a knock on a door to the garage. Byares asked who it was, and a person responded, "Mikey." Byares told Mayer someone was at the door for him. Byares returned to painting while Mayer went to the door.

Less than two minutes later, Byares thought she heard people yelling or something being thrown in the garage. Byares went to the garage and saw defendant and codefendant Michael Garcia[5] "beating up" Mayer. Specifically, the two men were hitting

---

[3] The other two prior prison term enhancements were stayed under section 654.

[4] Byares later testified she believed it was the same car but was not "a hundred percent sure."

[5] Because he shares a last name with defendant, Michael Lee Garcia will be referred to by his first name.

Mayer with their fists.  Byares asked them to stop, but they did not.  There was also a woman present, later identified as Bobbi Jo Blair.[6]

Defendant pushed Byares aside and entered the home, laughing and smirking.  Michael was still fighting Mayer.  Defendant retrieved a wallet from the bedroom, brought it to the garage and took out $200.[7]  The wallet itself was later found in the front yard.  At some point, defendant carried a safe from Byares's closet outside to the front yard.

Byares ran outside and screamed for help.  Byares was unable to flag down a nearby sheriff's deputy, so she picked up her dead cell phone and pretended to call 911.  Defendant, Michael, and Blair got into a car and drove away quickly.  The car they used to leave was the same one that had been following Byares earlier in the day.

Mayer was "shocked" and "dazed" after the incident.  His hand was bleeding, and he received stitches at a hospital.  Mayer identified the assailants to Byares as defendant and Michael Lee Garcia.  Mayer said one of them owed him money, so Mayer "put out … on the street" that he was owed money.  Mayer said defendant and Michael assaulted him because Mayer had "put their name on the street."

Police arrested Michael and Blair at a residence in Kings County.  Michael was found hiding under a bed in the residence.

The day after the robbery, police detectives interviewed defendant, who claimed he had been home all night.

---

[6] In the reporter's transcripts, Ms. Blair's first name is spelled "Bobby Joe." However, the information filed on May 23, 2018, spells her name "Bobbi Jo." Accordingly, we will also use that spelling.

[7] Later, Byares testified that the $200 was on the bed *next to* the wallet.

## DISCUSSION

### I. Court Did Not Err in Failing to Issue Unanimity Instruction

Defendant argues that a unanimity instruction or prosecutorial election was required here, and their absence requires reversal. We reject defendant's contention.

#### A. *Background*

The court instructed the jury on burglary as follows:

> "The defendants are charged in Count 1 with burglary. To prove the defendant is guilty of this crime the People must prove that:
>
> "One, the defendant entered a building.
>
> "And two, when he entered the building he intended to commit theft.
>
> "To decide whether the defendant intended to commit theft, please refer to the separate instruction I will give you on that crime.
>
> "A burglary was committed if the defendant entered with the intent to commit theft. The defendant doesn't have to actually committed [*sic*] theft, as long as he entered with the intent to do so. The People do not have to prove the defendant actually committed theft."

The court also instructed the jury that "[a] house includes any garage attached to the house, and functionally connected with it."

In closing argument, the prosecutor contended that the defendants entered the home with the intent to "steal money." The prosecutor further noted that, for purposes of a burglary, "a house does include any garage that is attached."

#### B. *Analysis*

In a criminal case, the jury's verdict must be unanimous. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Specifically, "the jury must agree unanimously the defendant is guilty of a specific crime. [Citation.]" (*Ibid.*, italics omitted.) As a result, "*when the evidence suggests more than one discrete crime*, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*Ibid.*, italics added.)

5.

The Attorney General contends the unanimity rule is not implicated here because there is no evidence of multiple discrete burglaries. In contrast, defendant argues the evidence in this case does suggest more than one discrete burglary: "First, [defendant] could have committed the crime by entering the garage with the intent to commit an assault. Second, he could have committed the crime by entering the house with the intent to commit theft."

As explained below, we reject defendant's contention that the jury could have relied on an intent-to-commit-assault theory of burglary.

### 1.    Intent-to-Commit-Assault Theory of Burglary Precluded by Target Offense Instruction

One way a burglary can occur is where the defendant enters a house or room "with intent to commit grand or petit larceny or any felony …." (§ 459.) The crime a defendant intended to commit upon entry is sometimes referred to as the "target offense."

Courts must identify for the jury the target offense(s) underlying a burglary charge. (See *People v. Hughes* (2002) 27 Cal.4th 287, 348–349.) Specifically, a trial court " 'must give instruction to the jury identifying and defining the target offense(s) that the defendant allegedly intended to commit upon entry into the building.' [Citation.]" (*Id.* at p. 349) Here, the court performed this duty by identifying "theft" as the target offense for the burglary charge. The instruction did not include assault or any other crime as a possible target offense. Because we presume juries correctly apply instructions, we cannot accept defendant's argument that the jury may have relied on an intent-to-commit-assault theory of burglary. Thus, defendant's intent-to-commit-assault argument cannot establish that the jury was faced with two discrete crimes for which a unanimity instruction was required.

### 2. Even Assuming Evidence Showed Two Legally Distinct "Entries," No Unanimity Instruction was Required

Defendant also argues there were two potential "entries" for burglary purposes: the entry into the garage and the entry into the home. However, as discussed above, the court's target offense instruction precludes the possibility the jury relied on a theory that defendant harbored one burglarious intent during the garage entry and a different burglarious intent during the home entry.

Thus, even if the jury could have concluded there were two burglarious "entries" – the entry into the garage and the entry into the home[8] – there was only one burglarious intent the jury could have relied on for both entries: intent to commit theft. Even in that circumstance, no unanimity instruction would be required. "[A] 'unanimity instruction is not required when the acts alleged are so closely connected as to form part of one transaction." ' [Citation.]" (*People v. Williams* (2013) 56 Cal.4th 630, 682.) If defendant entered the garage with intent to commit theft and then subsequently entered the house proper and a bedroom therein with the same intent to commit theft, unanimity is not required because those acts are so closely connected as to form part of one transaction.[9]

---

[8] The Attorney General notes that entry into an attached garage *is* entry into the home for purposes of burglary. (See *People v. Fox* (1997) 58 Cal.App.4th 1041, 1047.)

[9] Defendant cites *People v. Sparks* (2002) 28 Cal.4th 71, which addressed "whether a defendant's entry into a bedroom within a single-family house with the requisite intent can support a burglary conviction if that intent was formed only after the defendant's entry into the house." (*Id*. at p. 73; see also *People v. Taylor* (2010) 48 Cal.4th 574, 627.) The court answered that question affirmatively. However, the fact that a burglary conviction can be based on entry into a room does not mean that a defendant commits multiple burglaries by entering different rooms of a residence with the same intent. Otherwise, it could be argued that defendant committed several burglaries in the present case: once when he entered the garage, another when he entered the house, another when he entered the bedroom, and perhaps another when he reentered the garage. And, again, even if that were a proper classification of defendant's conduct, " ' "unanimity … is not required when the acts alleged are so closely connected as to

### 3. Evidence did not Suggest Defendant or Michael Only Formed Intent to Steal After Entering the Garage

Michael also posits that he could have formed intent to steal before entering the garage (in which case his entry into the garage was the burglarious entry) or he could have formed the intent to steal after entering the garage but before entering the house (in which case his entry into the house was the burglarious entry). To the extent defendant intends to make a similar argument, we reject it.

There was no evidence Michael or defendant formed the intent to steal only after entering the garage but before entering the house. The evidence only supported the inference that the intent to steal was formulated before entry into the garage or the house. Indeed, the prosecutor summarized that evidence to the jury:

> "What was the point in the three defendants coming to that house that night on 10th Avenue late in the evening? Were they coming over to get milk and cookies that [Byares] had ready for them? Obviously not. The intent behind the defendant's [*sic*] actions I would contend is circumstantially shown by the way in which they followed [Byares] throughout the day. You have the car there early in the morning. You have the same car following [Byares]. And then finally [Byares] identified it as the same car that she [sees] fleeing the scene. They were casing the place …."
>
> "Additionally[,] I want you to pay very close attention, look at the videos. What did the defendants do when they pulled up in the car? We talked about this. The front passenger and the back passenger doors were left open. The lights were left on, the car was left running. Why would you leave a car running with the doors open? You would only do something like that if you intended to get away as quickly as possible. You know, sometimes you might do something like that if … another person [is] in the car with you. I am just going to drop this for a minute, and come … right back. But there was no one that remained in the car. All three got out. All three walked in the direction towards the garage. That shows us that there was a plan in place. All three of them had the same purpose, and that purpose was to go in and steal money."

---

form part of one transaction." ' [Citation.]" (*People v. Williams*, *supra*, 56 Cal.4th at p. 682.)

In contrast, there was no evidence Michael or defendant only formulated an intent to commit theft after entering the garage.  Thus, it has not been shown that the "evidence suggests more than one discrete crime" so as to trigger the unanimity rule.  (*People v. Russo*, *supra*, 25 Cal.4th at p. 1132)

## II.    We Accept the Attorney General's Concession that the Matter Must be Remanded for Resentencing

The parties agree that this matter must be remanded for resentencing pursuant to Senate Bill 136,[10] which took effect on January 1, 2020.  (2019–2020 Reg. Sess.) (Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.)  We accept the Attorney General's concession on that point.

When defendant is resentenced, the court shall also consider whether it wishes to exercise the discretion granted by Senate Bill 1393 "to strike or dismiss the previously mandatory five-year prior serious felony conviction enhancement under section 667, subdivision (a)(1)." (*People v. Ellis* (2019) 43 Cal.App.5th 925, 928, fn. omitted.)[11]

### DISPOSITION

The matter is remanded for resentencing pursuant to Senate Bill 136, wherein the trial court shall strike the prior prison term enhancements imposed pursuant to section 667.5, subdivision (b).  At resentencing, the court shall also consider whether it wishes to

---

[10] Senate Bill 136 amended section 667.5, subdivision (b), and provides that "a one-year prior prison term enhancement will only apply if a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).  [Citation.]" (*People v. Lopez* (2019) 42 Cal.App.5th 337, 340–341.)

[11] In the respondent's brief, the Attorney General argued remand for consideration of Senate Bill 1393 was "unwarranted" because the court's comments suggested it was disinclined to make lenient sentencing choices.  However, in supplemental briefing, the Attorney General concedes the matter must be remanded for resentencing due to Senate Bill 136.  Because we are remanding for resentencing anyway pursuant to Senate Bill 136, there is no reason for the court not to consider its newfound discretion under Senate Bill 1393.

exercise the discretion granted by Senate Bill 1393. In all other respects, the judgment is affirmed.

POOCHIGIAN, Acting P.J.

WE CONCUR:


DETJEN, J.


MEEHAN, J.